John Bustamante MENDEZ, Appellant,

v.

The STATE of Texas.

No. 0817–01.

Court of Criminal Appeals of Texas, En Banc.

June 30, 2004.

Richard Alan Anderson, Dallas, for Appellant.

Kollin Shadle, Asst. DA, Abilene, Matthew Paul, State's Atty., Austin, for State.

WOMACK, J., delivered the opinion for a unanimous Court.

In this case we resolve conflicts in our cases that have existed for over 75 years on the question of a defendant's changing a plea of guilty to a plea of not guilty when evidence that is inconsistent with guilt is introduced in a jury trial. We hold that a defendant has a right on timely request to change the plea, but that a court has no duty to do it on the court's own motion.

## I. The Trial

It is undisputed that the appellant shot and killed the victim. He was indicted for the offense of murder. The court impaneled a jury. The prosecutor read to the jury only one paragraph of the indictment, which required the State to prove that the appellant intentionally or knowingly caused the victim's death. The defendant pleaded guilty. The State and the appellant introduced evidence for several days.

The fifty-four-year-old appellant was the last witness to be called in his defense. He testified about his sexual relationship with the sixteen-year-old victim, which ended when she "left" him. The appellant said that for three or four days he "stayed drunk most of the time" and used methamphetamine. He said that after the victim made taunting telephone calls to him, he put a handgun in his pants and went to the victim's place of work. When the victim locked the doors, he shot the lock to get in and "just went crazy." He shot the victim in the head.

He testified on direct examination:

Q. Now you've told the jury, you've pled guilty to knowingly and intentionally—

A. I shot her. I sure did.

Q. So whatever—

A. I did not mean to shoot her. I was going to scare her, as drunk as I was, and I hit her.

. . .

Q. Do you remember what you told the policeman when he came up?

A. Yeah. I told him that I thought I'd shot her, "I swear to God I think I shot her in the head."

Q. You swear to God you think you shot her.

A. I didn't even know where I'd hit her. I knew there was blood everywhere.

Q. Could you believe that you'd done that?

A. No, I didn't think I was going to hit her. I loved her more than life itself.

On cross-examination, the appellant testified:

A. I just—was in a rage; I don't remember. . . . I remember pointing a gun, but I didn't point it at her, I was just going to scare her, and then I shot—

. . .

Q. And in the intoxicated state that you were in, from this distance, you managed to hit her right in the head.

A. I didn't never intended to hit her.

Q. Okay. You pled on Monday . . . of intentionally and knowingly killing

[the victim]. You did not plead to recklessly, accidentally shooting [the victim]. Which one is it, sir?

A. I didn't intend to kill her. I mean, I killed her, and I know I did, it's my fault, but—

Q. So you did not intend to kill her.

A. No, I did not.

Q. You did not knowingly kill her.

A. No. Well, I mean, I know that I killed her; she's dead.

Q. Okay. So the plea that you entered on Monday was really a fictitious plea; is that right?

A. I just didn't—didn't understand how the—why I was—the plea worked, but, I mean, I didn't—I didn't intentionally walk in there to go shoot her right in the head and kill her.

Q. Okay. Well, we went over the definitions of intentionally and knowingly in great detail with this jury panel; gave them examples. You were in the courtroom during that time. And then you entered a plea to intentionally and knowingly killing [the victim]. You still hold by that plea?

A. I did not go in there directly to shoot her, I just—I did not.

After closing the evidence, the court instructed the jury to find the defendant guilty as charged in the indictment and assess his punishment. The charge of the court required the jury to decide whether the murder was of the second degree, that is, a murder committed under the immediate influence of sudden passion arising from an adequate cause.[1] The charge also required the jury, if it assessed punishment of not more than ten years in prison, to decide whether the defendant should have a suspended sentence and community supervision.[2] The charge instructed the jury that evidence of temporary insanity caused by intoxication could be considered in mitigation of punishment.[3]

The jury found the defendant guilty of murder; it did not find that the murder was of the second degree; it assessed punishment of 99 years in prison and no fine. The court entered judgment in accordance with the verdict.

## II. The Appeal

The defendant appealed, complaining that the trial court should have *sua sponte* withdrawn his guilty plea after the testimony raised an issue as to his guilt. The Eleventh Court of Appeals said:

The law has been that a trial court is required to sua sponte withdraw a defendant's guilty plea if the evidence reasonably and fairly raises an issue as to the innocence of the accused. *See, e.g., Griffin v. State,* 703 S.W.2d 193 (Tex.Cr. App.1986); *Gates v. State,* 543 S.W.2d 360 (Tex.Cr.App.1976). If a trial court fails to act in accordance with that rule, reversible error occurs. *See Montalvo v. State,* 572 S.W.2d 714 (Tex.Cr.App. 1978); *Woodberry v. State,* 547 S.W.2d

---

1. "At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." TEX. PENAL CODE § 19.02(d).

2. "A jury that imposes confinement as punishment for an offense may recommend to the judge that the judge suspend the imposition of the sentence and place the defendant on community supervision. A judge shall suspend the imposition of the sentence and place the defendant on community supervision if the jury makes that recommendation in the verdict." TEX.CODE CRIM. PROC. art. 42.12, § 4(a).

3. *See* TEX. PENAL CODE § 8.04(b) *et seq.*

629 (Tex.Cr.App.1977); *Gates v. State, supra; Cooper v. State,* 537 S.W.2d 940 (Tex.Cr.App.1976); *Burks v. State,* 145 Tex.Crim. 15, 165 S.W.2d 460 (1942). In each of these cases, the Court of Criminal Appeals held that the trial court should have *sua sponte* withdrawn the defendant's guilty plea and that, in failing to do so, the trial court reversibly erred. We find it to be significant that in none of those cases was there a discussion of harmless error nor was there a finding of waiver in accordance with the law as it then existed.

Recently, the Court of Criminal Appeals, in a unanimous opinion, cited TEX. R. APP. P. 33.1 and held:

> Except for complaints involving fundamental constitutional systemic requirements which are not applicable here, all other complaints based on a violation of both constitutional and statutory rights are waived by failure to comply with Rule 33.1.

*Ibarra v. State,* 11 S.W.3d 189, 197 (Tex. Cr.App.1999). Structural errors (those which involve fundamental constitutional systemic requirements) are those which defy analysis by harmless error standards. *Manley v. State,* 23 S.W.3d 172, 175 (Tex.App.-Waco 2000, pet'n ref'd), *citing Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Salinas v. State,* 980 S.W.2d 219 (Tex.Cr.App.1998); *Foster v. State,* 8 S.W.3d 445 (Tex.App.-Waco 1999, no pet'n). The Court of Criminal Appeals has held that questions regarding the voluntariness of a plea do not defy harm analysis and, therefore, do not involve fundamental constitutional systemic requirements. *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Cr.App.1997). In *Cain,* the court stated:

> Except for certain federal constitutional errors labeled by the United States Supreme Court as "structural," no error, whether it relates to jurisdiction, *voluntariness of a plea,* or any other mandatory requirement, is categorically immune to a harmless error analysis. (Emphasis added)

Even if we assume that, under the record in this case, the trial court should have withdrawn appellant's guilty plea on its own motion, the inquiry does not end. Without deciding the effect, if any, that *Ibarra* and *Cain* have on a trial court's duty to *sua sponte* withdraw a guilty plea under these circumstances, we hold that, under the current state of the law, appellant has waived any error by failing to call it to the trial court's attention.

Rule 33.1 provides in relevant part:

(a) In General. As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and

(2) the trial court:

(A) ruled on the request, objection, or motion, either expressly or implicitly; or

(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

Appellant did not preserve his complaint in accordance with Rule 33.1 regarding the trial court's failure to *sua sponte* withdraw his guilty plea. As a result of that failure, any error is waived. We note that this very issue has been decided recently by the Waco Court of Appeals in *Williams v. State,* 10 S.W.3d 788 (Tex.App.-Waco 2000, pet'n ref'd). *See also Foster v. State, supra.* The first point of error is overruled.[4]

### III. Our Review

In this case and in the *Williams* case that the Eleventh Court cited, the courts of appeals were right to overrule appellants' complaints about trial courts' failing to withdraw pleas of guilty when evidence inconsistent with guilt was introduced before juries. We granted review, not to reverse the judgments of the courts below, but to clarify this area of the law.

Past decisions of this court made the tasks of the courts of appeals in these cases difficult in more than one way. The rules for deciding whether a complaint may be presented on appeal were made

indistinct by a sentence in our *Ibarra* opinion which the courts of appeals quoted.

### A. "Structural Errors" and "Systemic Requirements"

■ In the opinion below and in the *Williams* case that it cited,[5] the courts of appeals have mixed the concept of "systemic requirement," which has to do with preservation of error, with the concept of "structural error," which has to do with harmfulness of error.

#### 1. Distinguishing the terms.

■ A "structural error" is not subject to a harmless-error test.

Except for certain federal constitutional errors labeled by the United States Supreme Court as "structural," no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis. Of course, where the error involved defies analysis by harmless error standards or the data is insufficient to conduct a meaningful harmless error analysis, then the error

4. *Mendez v. State,* 42 S.W.3d 347, 348–49 (Tex.App.-Eastland 2001).

5. "The Court of Criminal Appeals has recently held that, '[e]xcept for complaints involving fundamental constitutional systemic requirements ..., all other complaints ... are waived by failure to comply with Rule 33.1.'" *Ibarra v. State,* 11 S.W.3d 189, 197 (Tex.Crim. App.1999). The United States Supreme Court has classified these "fundamental' requirements" as those which, when denied, "defy analysis by 'harmless error' standards."' *Foster v. State,* 8 S.W.3d 445, 446 (Tex.App.-Waco 1999, no pet. h.) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).
"A question concerning the voluntariness of a guilty plea does not fall within the definition of such 'fundamental' requirements. *See Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim. App.1997). In *Cain,* the Court wrote:

"Except for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, *voluntariness of a plea,* or any other mandatory requirement, is categorically immune to a harmless error analysis.
"*Id.* (emphasis added). Because a challenge to the voluntariness of a guilty plea does not implicate one of the 'fundamental' requirements identified by the Supreme Court, an appellant must properly preserve such a complaint for appellate review. *See Foster,* at 447; *see also Ibarra,* at 197.
"Williams's sole complaint on appeal relates to the voluntariness of his guilty plea. Griffin, 703 S.W.2d at 195. Thus, it must be properly preserved for appellate review in accordance with Rule 33.1." *Williams,* 10 S.W.3d, at 789.

will not be proven harmless [under the applicable harmless-error test]. Hence, it may be true that some kinds of errors (particularly jurisdictional ones) will never be harmless under the [applicable] test and that some other kinds of errors will rarely be harmless. But, appellate courts should not automatically foreclose the application of the harmless error test to certain categories of error. Where an error is shown to be harmless, it is not a ground for reversal, regardless of the category or label attached to that particular error.[6]

The Supreme Court has described structural error in the trial of a criminal case, and it has identified certain constitutional errors as structural.

A "structural" error, we explained in *Arizona v. Fulminante,* is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself," 499 U.S. [279], 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). We have found structural errors only in a very limited class of cases: a total deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of defendant's race, the right to self-representation at trial, the right to a public trial, [and an] erroneous reasonable-doubt instruction to the jury.[7]

Most constitutional errors are not "structural"; that is, they can be harmless.[8]

■ A "systemic requirement" (also known as an "absolute requirement or prohibition") is a law that a trial court has a duty to follow even if the parties wish otherwise. Any party that is entitled to appeal may complain on appeal that such a requirement was violated, even if the party failed to complain about the failure or waived the application of the law.[9] (A party may be estopped from complaining about an error that it invited, however.)[10]

### 2. Systemic requirements, waivable rights, and forfeitable rights.

■ A systemic (or absolute) requirement is one of the "three distinct kinds" of rules that our judicial system may be thought to contain, according to our opinion in *Marin v. State.*[11] A second kind is the "waivable right,"[12] that is, "rights of litigants which must be implemented by the system unless expressly waived."[13] The third kind is the "forfeitable right";[14] in this class are "rights of litigants which are to be implemented upon request."[15] "A cursory examination of the myriad evidentiary and procedural rules compris[ed by] our system reveals that most of them are of this [forfeitable] type. ... In short, the rights of litigants in our system are usually forfeited by a failure to exercise

6. *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Cr. App.1997).

7. *Johnson v. United States,* 520 U.S. 461, 468–69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citations omitted).

8. *Arizona v. Fulminante,* 499 U.S., at 306 ("the Court has applied harmless-error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless") (collecting cases).

9. *See Marin v. State,* 851 S.W.2d 275, 280 (Tex.Cr.App.1993).

10. *See Prystash v. State,* 3 S.W.3d 522 (Tex.Cr. App.1999); *State v. Yount,* 853 S.W.2d 6 (Tex. Cr.App.1993).

11. *Marin,* 851 S.W.2d, at 279.

12. *Id.,* at 280.

13. *Id.,* at 279.

14. *Ibid.*

15. *Ibid.*

them."[16] The requirements for presenting a complaint for appellate review are not the same for the all these kinds of rules.

The general requirement for preservation of complaints for appeal is Rule of Appellate Procedure 33.1(a). It is set out verbatim, above, in a quotation of the court of appeals' opinion in this case. It could be summarized as requiring a timely, specific objection and a ruling by the trial court.

■ Rule 33.1(a) "was meant to reaffirm the basic principles of adversary litigation, not to amend or repeal them. ... [It] applies only to actions of the trial court concerning which a party forfeits the benefit of a right belonging to him if he does not complain about it at trial. The rule does not apply to rights which are waivable only or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal."[17] That is, there are two types of complaints to which Rule 33.1(a) does not apply.

In our *Ibarra* opinion, we said, "Except for complaints involving fundamental constitutional systemic requirements which are not applicable here, all other complaints based on a violation of both constitutional and statutory rights are waived by failure to comply with Rule 33.1."[18] This description of the exceptions to Rule 33.1(a) was incorrect in several ways. First, it omitted one of the types of complaints to which the rule does not apply: complaints about rights that are waivable only.

Second, it incorrectly described complaints about systemic requirements as "complaints involving fundamental constitutional systemic requirements." Systemic requirements are not necessarily constitutional. The "clearest cases of ... systemic requirements," which we identified in *Marin*, are "laws affecting the jurisdiction of the courts,"[19] specifically, jurisdiction of the subject and jurisdiction of the person. These laws are not constitutional.

We used the word "fundamental" in *Ibarra* to describe the systemic requirements, which could be misleading. "Fundamental" is the word that has been used by this court to identify complaints that may be raised for the first time on appeal.[20]

Before 1993 this Court had recognized more than a dozen other kinds of fundamental error. This jurisprudence "reflects piecemeal developments that each have somewhat different rationales. The overall situation, then, simply cannot be explained by reference to any unifying principle or principles. *Marin v. State* suggest(ed) both the need to reconsider this case law and a framework for that reconsideration."[21]

"*Marin* has been a watershed decision in the law of error-preservation."[22] Questions of "fundamental error" now are considered in its framework.

Another mistake in our *Ibarra* opinion was saying that noncompliance with Rule 33.1(a) results in complaints being

16. *Id.,* at 278.

17. *Id.,* at 280.

18. *Ibarra v. State,* 11 S.W.3d 189, 197 (Tex. Cr.App.1999).

19. *Marin,* 851 S.W.2d, at 279.

20. *Saldano v. State,* 70 S.W.3d 873, 887 (Tex. Cr.App.2002).

21. *Id.,* at 887–88 (quoting GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE-CRIMINAL PRACTICE AND PROCEDURE § 42.121 (1st ed.1995)).

22. *Id.,* at 888.

"waived." In *Marin* we carefully distinguished waiver, which requires the intentional relinquishment or abandonment of a known right or privilege, from the forfeiture that is the consequence of not complying with Rule 33.1(a).

A statement that is correct, and perhaps less susceptible of being misread, would be, "Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only, which are not involved here, all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." This statement would have been applicable to Ibarra's complaint, which was that the judgment against him "should be reversed because he was not informed of his rights, upon arrest, as guaranteed by the Vienna Convention on Consular Relations."[23] As we held, Ibarra's claim did not meet the "timely" requirement of Rule 33.1.[24]

### B. Preservation of Mendez's complaint.

The appellant's complaint is, "The trial court erred in failing to *sua sponte* withdraw Appellant's plea of guilty before the jury and enter for Appellant a plea of not guilty to the jury when Appellant presented evidence of his innocence to the allegations [of intentional or knowing murder] in Paragraph One of the indictment that was not withdrawn in the jury's presence."[25] His complaint was raised for the first time on appeal. As we have said above, this is permitted if the complaint is that the trial court disregarded an absolute or systemic requirement, or that the appellant was denied a waivable-only right that he did not waive. If it is a complaint about another kind of law, the appellant forfeited his right to present the claim on appeal by failing to present a timely, specific objection, request, or motion to the trial court for a ruling as Rule of Appellate Procedure 33.1(a) requires.

### 1. The courts of appeals' analyses.

In this case, the Court of Appeals said, "Even if we assume that, under the record in this case, the trial court should have withdrawn appellant's guilty plea on its own motion, the inquiry does not end."[26] In accordance with the decision of another court of appeals,[27] it held "that, under the current state of the law, appellant has waived any error by failing to call it to the trial court's attention" as Rule of Appellate Procedure 33.1(a) requires.[28] The holding is inconsistent with *Marin*.

If the trial court had the duty that the court of appeals assumed, Rule 33.1(a) would not have applied. A law that puts a duty on the trial court to act *sua sponte*, creates a right that is waivable only. It cannot be a law that is forfeitable by a party's inaction. This was the precise holding of *Marin*.

Marin's complaint on appeal was that his appointed counsel was not given the ten

**23.** *Ibarra*, 11 S.W.3d, at 197.

**24.** *See ibid.*

**25.** Brief in court of appeals, at 3.

**26.** *Mendez*, 42 S.W.3d, at 349.

**27.** *Ibid.* ("We note that this very issue has been decided recently by the Waco Court of Appeals in *Williams v. State*, 10 S.W.3d 788 (Tex.App.-Waco 2000, pet'n ref'd)").

**28.** *Mendez*, 42 S.W.3d, at 349; *Williams*, 10 S.W.3d, at 789 ("the trial court has a duty to sua sponte withdraw the defendant's guilty plea and enter a not guilty plea. ... Williams's sole complaint on appeal relates to the voluntariness of his guilty plea. Thus, it must be properly preserved for appellate review in accordance with Rule 33.1") (citation omitted).

days to prepare for trial to which she was entitled by a statute.[29] This complaint had not been presented to the trial court. The court of appeals held that *Marin* had not waived his right to the ten days, but he did waive his right to complain on appeal by failing to present his complaint to the trial court as the rule of appellate procedure required.[30] This court held:

> In the instant cause, the Court of Appeals rightly determined that [the statute] is waivable only, inasmuch as the Legislature said so expressly by providing that appointed counsel "may waive the (10 days of) preparation time with the consent of the defendant in writing or on the record in open court." We agree with the lower court that this language clearly does not contemplate a forfeiture of the statutory right from a mere failure to object at trial. But the Court of Appeals erred to hold that an objection is nevertheless required to preserve for appellate review the denial of this right.[31]

This was because "we think it far more consistent with the overall structure of our adversary system that litigants not be re-quired by Rule 52(a) to do more for the preservation of their complaints on appeal than they must do at trial to secure benefits of the law to which they are entitled." [32] (Rule of Appellate Procedure 52(a) [33] was rewritten and renumbered as 33.1(a) in 1997,[34] but its requirements did not change in any way that is material to this case.)

We turn to the question of, what kind of rule governs a defendant's maintaining a plea of guilty in a jury trial? .

### 2. Defendant's right to plead not guilty.

The Code of Criminal Procedure requires only one pleading of the defendant in a criminal case: the defendant's pleading as to guilt, which may be guilty, not guilty, or nolo contendere. An article of the Code provides, "If the defendant refuses to plead, the plea of not guilty shall be entered for him by the court." [35] That article gives the trial court a duty in the absence of action by the defendant. Another article of the Code authorizes the defendant to choose other pleadings, including guilty or nolo contendere.[36] Together the articles create a defendant's right to a plea of not guilty that is a "waivable right" in *Marin's* taxonomy—

**29.** *See* Tex.Code Crim. Proc. art. 1.051(e) ("An appointed counsel is entitled to 10 days to prepare for a proceeding but may waive the preparation time with the consent of the defendant in writing or on the record in open court").

**30.** *Marin v. State*, 801 S.W.2d 944 (Tex.App.-Austin 1990).

**31.** *Marin v. State*, 851 S.W.2d 275, 280 (Tex. Cr.App.1993).

**32.** *Id.*, at 278.

**33.** "(a) General Rule. In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific ground he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint. It is not necessary to formally except to the rulings or orders of the trial court." Tex.R.App. P. 52(a) (1986).

**34.** The rule is set out above, at page 6.

**35.** Tex.Code Crim. Proc. art. 27.16(a).

**36.** *See id.*, art. 27.02.

one that "must be implemented by the system unless expressly waived." [37]

The waiver of the right to a plea of not guilty is surrounded by procedural protections both constitutional and statutory. The waiver of that right may entail the waiver or abridgement of other rights. Even when the plea is entered without waiver of trial by jury, the constitutional rights that are affected may include the right to have the State prove guilt beyond a reasonable doubt, and the right to confront and cross examine witnesses against the defendant.[38] Due process of law requires that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." [39] In particular, the Supreme Court has held that a defendant who entered a plea of guilty to a charge of second-degree murder without being informed that intent to cause the death of his victim was an element of the offense did not enter a voluntary plea.[40]

Due process of law is not denied by a conviction based on a plea of guilty that is accompanied by "a strong factual basis for the plea demonstrated by the State and [a defendant]'s clearly expressed desire to enter it despite his professed belief in his innocence." [41]

Other laws, of course, may offer greater protections than the constitutions require.[42] In a felony case in Texas, the Code of Criminal Procedure requires the defendant to appear in open court in person.[43] The court must admonish the defendant of the possible punishment and certain other consequences of conviction.[44] The court may not accept a plea other than not guilty unless it appears that the defendant is mentally competent and the plea is free and voluntary.[45] In the case of felony, if the punishment is not absolutely fixed by law, a jury must be impaneled to assess the punishment of the defendant who has waived the right to plead not guilty, unless the defendant has waived the right to trial by jury.[46]

Texas is one of a handful of states in which the jury may assess punishment in a non-capital case.[47] Texas' experience with

37. *Marin*, 851 S.W.2d, at 279.

38. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

39. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

40. *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

41. *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

42. *See id.*, at 38 n. 11 ("A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court, see *Lynch v. Overholser*, 369 U.S.[705], at 719, 82 S.Ct. 1063, 8 L.Ed.2d 211 [(1962)] (by implication), although the States may by statute or otherwise confer such a right. Likewise, the States may bar their courts from accepting guilty pleas from any defendants who assert their innocence.

*Cf.* FED. RULE CRIM. PROC. 11, which gives a trial judge discretion to 'refuse to accept a plea of guilty * * *.' We need not now delineate the scope of that discretion").

43. TEX.CODE CRIM. PROC. art. 27.13.

44. *See id.*, art. 26.13(a)(1)-(5), (c), (d), & (h).

45. *See id.*, art. 26.13(b).

46. *See id.*, art. 26.14.

47. The Bureau of Justice Statistics, in the United States Department of Justice, reported in a study of the organization of state courts that in three states (Arkansas, Missouri, and Virginia) juries assess punishment (which the judge could alter) in non-capital felony cases, and in two others (Indiana and Kentucky) juries recommended punishment that was assessed by the judge in such cases. State Court Organization, 1998 300–01 (2000).

jury sentencing is long. The first legislature of the state enacted a statute requiring juries to assess punishment in every case in which a defendant pleaded guilty.[48] In 1879 the requirement of a jury on a plea of guilty was limited to felony cases.[49] It seems that fifty years later that burden had become too great. After the Supreme Court held in 1930 that a trial by jury on the issue of guilt could be waived,[50] the next legislature amended the Code of Criminal Procedure to permit the waiver of jury trial.[51] The emergency clause of the act said it was justified "in order to reduce the expense of law enforcement and to hasten the disposition of felony cases wherein pleas of guilty are entered."[52] (In 1965 the Code was amended to permit, in cases of felony other than a capital felony in which the State seeks the death penalty, the waiver of trial by jury on pleas of not guilty as well as guilty.)[53]

▮▮▮ This court has found a right for a defendant to change his plea from guilty to not guilty if the request is timely. In a trial before a jury, the defendant may change the plea from guilty to not guilty at any time before the jury retires to deliberate its verdict;[54] when trial by jury has been waived, the defendant may change the plea from guilty to not guilty until the court pronounces judgment or takes the case under advisement.[55]

We have held that some defendants, although not explicitly requesting to change their pleas from guilty to not guilty, have conveyed sufficiently to the trial court a desire to have the issue of guilt decided by the jury. The leading decision is *Harris v. State.*[56]

Harris pleaded guilty to an indictment alleging that he murdered his wife by shooting her. "There [wa]s some indication that the defendant first entered a plea of not guilty ... and the judge certifies that he had a commission of doctors to examine into the sanity of appellant, and that two of these physicians made a report."[57] The doctors reported that the defendant knew right from wrong, although he was mentally weak and had an uncontrollable temper.[58] The defendant then pleaded guilty. "There [still wa]s quite a lot of testimony introduced on the issue of insanity."[59] At the close of testimony, the defendant requested to see the court's charge, and the court refused to let him read the charge. "This was error."[60] The court's charge instructed the jury that the defendant was sane.[61] The defendant later filed an exception to the charge and

---

48. Act of April 30, 1846, 1st Leg., R.S., 1846 Tex. Gen. Laws 161, *reprinted in* H.P.N. GAMMEL, 2 THE LAWS OF TEXAS 1467.

49. *See* TEX.CODE CRIM. PROC. art. 519 (1879).

50. *See Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930).

51. Act of April 9, 1931, 42nd Leg., R.S., ch. 43, 1931 Tex. Gen. Laws 65.

52. *Id.,* § 8, 1931 Tex. Gen. Laws, at 66.

53. *See* Code of Criminal Procedure Act of 1965, 59th Leg., R.S., ch. 722, § 1, arts. 1.13–.15, 1965 Tex. Gen. Laws vol. 2, p. 317, 321–22.

54. *McWherter v. State*, 571 S.W.2d 312 (Tex. Cr.App.1978).

55. *Jackson v. State*, 590 S.W.2d 514 (Tex.Cr. App.1979).

56. 76 Tex.Crim. 126, 172 S.W. 975 (1915).

57. *Harris,* 76 Tex.Crim., at 129, 172 S.W., at 976

58. *Ibid.*

59. *Ibid.*

60. *Id.,* at 130, 172 S.W., at 976.

61. *Ibid.*

special requested instructions on the question of sanity "which should have been given by the court," but they were refused.[62] "The charge, although given in a case where the plea was guilty, was erroneous in instructing the jury under the facts of this case that defendant was sane."[63] The judgment of guilt and sentence of death were reversed. This court said that sanity "was the main contested issue," and the trial court should not have taken it away from the jury.[64] Judge Davidson wrote for the court:

> Wherever there is a contested issue before a jury in a criminal prosecution, it is the province of the jury to pass upon the weight of the testimony and the credibility of the witnesses, and this is not different under a plea of guilty from the case where the plea is not guilty. The statute requires that, when the defendant insists upon pleading guilty, certain things must be ascertained by the court before the plea of guilty will be entertained. The statute further provides that when the plea is entered testimony shall be introduced to enable the jury to fix the punishment. The court may determine perhaps in the first instance to his satisfaction that the statute has been complied with before receiving the plea, but when the facts get before the jury the jury passes upon the weight of the testimony and the credibility of the witnesses. It has been held by the decisions that this statute is mandatory, and, instead of being for the benefit of the defendant, it is more especially designed to protect the interest of the state by preventing aggravated cases of crime from being compromised by the assessment of minimum punishment. It also has been held that the

provisions of the statute should be fully observed and administered. It has been further held that the trial is precisely the same under a plea of guilty as under a plea of not guilty, under the statute which requires evidence to be submitted. *Crow v. State,* 6 Tex. 334; *Martin v. State,* 36 Tex. Cr. R. 632, 38 S.W. 194. The fact that the court thought the defendant was sufficiently sane to admit the plea of guilty did not take away from the jury the right to pass upon his sanity under the facts submitted to them. In the *Crow* Case, *supra,* as we understand it, the law is as therein stated. Judge Lipscomb in that opinion uses this language:

> "It is believed to amount to nothing more than an acknowledgment of the facts charged, and whether such facts constitute an offense at law is left open to be decided by the court."

> If the defendant pleads guilty, and the facts should develop that he is not guilty, but acted purely in self-defense, it would be the duty of the court to see that no conviction was had, although a plea of guilty was entered. Our law only authorizes a conviction where guilt is shown. If there be no legal guilt, a conviction could not be sustained, although the defendant entered a plea of guilty.[65]

This important passage is remarkable for several reasons. First, it has engendered a line of confusing decisions that contradict other decisions of this court.

Second, it begins with a condition that applies throughout the discussion: "Wherever there is a contested issue before a

---

**62.** *Id.,* at 130, 172 S.W., at 976–77.

**63.** *Id.,* at 130, 172 S.W., at 977.

**64.** *Id.,* at 132, 172 S.W., at 977.

**65.** *Id.,* at 130–31, 172 S.W., at 977.

jury in a criminal prosecution ..." When is an issue "contested"?

In *Martin*, a precedent on which Judge Davidson relied and in which he wrote the opinion, the defendant pleaded guilty to an indictment alleging the offense of murder. The penal code of that time made it impossible for a defendant to plead guilty to an indictment for murder in such a way as to resolve all issues of fact. The code required a jury to decide issues of fact about the degree of the murder as well as punishment.[66]

The question in *Martin* was whether it was error to overrule the defendant's exception to the court's charge for failing to submit to the jury the rule pertaining to corroboration of the testimony of accomplices. The court, *per* Davidson, J., held that it was error because the statute that required the jury to decide the degree of murder created an issue of fact for the jury. "Now, whenever a fact is to be found by a jury, upon the truth of which the life and liberty of the citizen depends, and the testimony of an accomplice is relied upon to establish the truth of such fact, the rule contained in [the accomplice-witness statute] should be submitted to the jury." [67]

Third, the citation of, and quotation from, *Crow* introduced some confusion into *Harris*. It was incorrect as a matter of fact to say that *Crow* "held that the trial is precisely the same under a plea of guilty as under a plea of not guilty." *Crow* had nothing to do with the jury's resolution of issues of fact or the court's duty to withdraw a plea of guilty. *Crow* pleaded guilty to a charge of "betting money on a game of tenpins, which said game of tenpins was then and there a gambling device." He brought a writ of error.

> The error relied on and assigned, [wa]s, that no offence against the law, is charged in the indictment. A preliminary question is presented, growing out of the plea of the defendant in the indictment. He pleaded guilty. If this plea is equivalent to a confession of judgment in civil proceedings, it might be contended, on authority, that it amounts to a waiver and release of all errors. We cannot, however, regard the plea, as drawing after it the same consequences as a confession of judgment in a civil suit. It is believed to amount to nothing more than an acknowledgement of the facts charged; and whether such facts constitute an offence at law, is left open to be decided by the Court. Again, it is not the policy of the State, to enforce a judgment, when no offence against law has been committed.[68]

This cannot be described as being a holding "that the trial is precisely the same under a plea of guilty as under a plea of not guilty," as the *Harris* opinion said. It was a holding that a plea of guilty in a

---

66. *See* Tex. Penal Code art. 711 (1895) ("All murder committed by poison, starving, torture, or with express malice, or committed in the perpetration or in the attempt at the perpetration of arson, rape, robbery or burglary, is murder in the first degree, and all murder not of the first degree is murder of the second degree"); *id.*, art. 712 ("If the jury shall find any person guilty of murder, they shall also find by their verdict whether it is of the first or second degree; and if any person shall plead guilty to an indictment for murder, a jury shall be summoned to find of what degree of murder he is guilty, and in either case they shall also find the punishment"); *id.*, art. 714 ("The punishment of murder in the first degree shall be death or confinement in the penitentiary for life, and the punishment of murder in the second degree shall be confinement in the penitentiary for not less than five years").

67. *Martin*, 36 Tex.Crim. at 641, 38 S.W. at 196.

68. 6 Tex. at 334.

criminal case is not like a confession of judgment in a civil case that waives and releases all errors. The Supreme Court went on to hold, as a matter of law, that the term "betting at a gambling device" in the statute could not be construed to include betting on a tenpin alley.[69]

Fourth, *Harris* did not make it clear how the trial court should have left the issue of sanity for the jury when the plea was guilty and the jury's only choices went to the degree of the offense and the punishment to be assessed. This issue was resolved with the decision on rehearing in *Taylor v. State*,[70] but some language in that decision led to confusion in later years.

Taylor pleaded guilty to a felony of assault with intent to kill. The record in his appeal included a written plea, evidently filed during the trial, which said that he pleaded guilty and insane. This plea was not called to the attention of the trial court or the prosecutor.[71] There was no evidence of insanity. Taylor's theory on appeal turned out to be that the secret plea of insanity triggered the State's duty to prove him sane and created an otherwise invisible issue of fact. The trial court overruled Taylor's requested special charges on insanity. This court affirmed. We said that the suggestion in *Harris* that the issue of sanity be submitted to the jury together with the defendant's plea of guilty "is fundamentally unsound and would necessarily cause much confusion in practice ... in that ... a plea of insanity is as surely a plea of not guilty as can be ..."[72]

The *Taylor* opinion also said:

We are also of opinion that, if the evidence so introduced to enable the jury to fix the punishment pertinently suggested insanity at the time of the commission of the offense, this court would reverse if opportunity was refused appellant to withdraw his plea of guilty and have all the issues passed upon by the jury. It was correctly held in the *Alexander Case*, 69 Tex.Cr.R. 23, 152 S.W. 436, that at any time before the retirement of the jury a plea of guilty might be withdrawn and the case tried on a plea of not guilty, and such course should be followed when the evidence offered to enable the jury to fix the punishment shows a state of case under which, if true, the accused would not be guilty of any crime.[73]

It will be noticed that this statement spoke of error to refuse a defendant's motion to withdraw a plea of guilty, that plea presumably being replaced by a plea of not guilty, so that the jury could resolve the contested issue of sanity.

If that were all the *Taylor* opinion said, there would be no difficulty in the case that is before us today. Unfortunately, between the passages that are quoted above, the *Taylor* opinion included this sentence:

We are of opinion that in [the *Harris*] case the correct procedure should have been that it would at once become the duty of the trial court, upon a hearing under the plea of guilty, if the evidence introduced showed insanity, to have the plea of guilty withdrawn and a plea of not guilty entered upon behalf of the accused and the issues fully and legally determined thereafter, and our opinion is that the *Harris* Case should have

---

69. *Ibid.*

70. 88 Tex.Crim. 470, 227 S.W. 679 (1921).

71. *Id.,* at 473–74, 227 S.W., at 680–81.

72. *Id.,* at 483, 227 S.W., at 686.

73. *Ibid.*

been reversed and remanded for the failure of the trial court to so proceed.[74]

Here the court delivered not only a dictum about *Harris*, but one that was broader than the facts of that case required. Not only was there evidence of insanity in Harris's trial; Harris vigorously sought his right to inspect the court's charge, and, when he was belatedly given it, he informed the court of his desire to have the issue of insanity submitted to the jury. As we said in *Taylor*, a plea of insanity is surely a plea of not guilty. The error in *Harris* was the trial court's refusal to charge the jury correctly when the defendant raised his complaint in as timely and specific a manner as the trial court would permit. That record did not call for the creation of a duty on the trial court to withdraw a plea of guilty when it merely heard evidence that was inconsistent with guilt, while the defendant did nothing.

In *Taylor* there was no evidence of insanity, and the defendant's actions were significantly different. He did not call to the court's attention his plea of insanity, and his request for a charge on sanity seemed unsupported.

For quite some time the conflict between these passages in *Taylor* seemed to have little significance. In one case, we adhered to the passages in *Taylor* that required a defendant to move to withdraw the plea of guilty.[75] In other cases, we repeated the passages in *Taylor* that put the duty on the trial court to change the plea without a request by the defendant, but the appeal did not turn on such statements.[76] Some cases were the reverse of *Harris:* when defendants introduced evidence of insanity the trial court changed their pleas from guilty to not guilty, and we affirmed.[77] In one case the trial court did what we said in *Taylor* was unsound: it simultaneously instructed the jury to find the defendant guilty on his plea of guilty and to consider whether he was insane.[78] In one case in which the judgments were reversed, we said the trial court had a duty to act *sua sponte*, but the defendant actually had made a motion in the trial court.[79]

But by the 1970's a line of cases had developed that, we said, stood for the rule that upon receiving evidence that went "farther than just tending to show a defensive issue" and "reasonably and fairly presented such issue ... the trial court is required to withdraw the guilty or nolo contendere plea."[80] In 1978 we specifically said that a trial court had such a duty "even though no effort was made by the defense counsel at any time during the trial to withdraw the plea and no objection was made to the court's charge to the jury instructing them that a finding of guilty be rendered."[81]

74. *Ibid.*

75. *Aills v. State,* 114 Tex.Crim. 345, 24 S.W.2d 1097 (1930).

76. *See Navarro v. State,* 141 Tex.Crim. 196, 147 S.W.2d 1081 (1940) (evidence insufficient to trigger duty); *Villa v. State,* 122 Tex.Crim. 142, 53 S.W.2d 1023 (1932) (reversed for other errors in charge).

77. *Edwards v. State,* 134 Tex.Crim. 153, 114 S.W.2d 572 (1938); *Yantis v. State,* 95 Tex. Crim. 541, 255 S.W. 180 (1923).

78. *Thompson v. State,* 127 Tex.Crim. 494, 77 S.W.2d 538 (1934).

79. *Gates v. State,* 543 S.W.2d 360 (Tex.Cr. App.1976).

80. *Varela v. State,* 553 S.W.2d 111 (Tex.Cr. App.1977).

81. *Montalvo v. State,* 572 S.W.2d 714, 715–16 (Tex.Cr.App.1978).

In the same year, ironically, we held that the trial court had no such duty in a case in which trial by jury has been waived.[82] Just last year we clarified that decision by holding that when a defendant has waived trial by jury and pleaded guilty, the trial court has no duty to conduct some special proceeding when evidence inconsistent with guilt is introduced.[83]

There are, then, a conflict within the opinion in our leading case, a conflict among our subsequent decisions, and a conflict between the rules for trials with a jury and trials without a jury.

We think that the rule was better stated in *Taylor* when we spoke in terms of the familiar rule that a defendant has the right to withdraw a plea of guilty (or nolo contendere) in a timely fashion, whether the trial be with or without a jury. The procedures involved are different. As we have said, a defendant's decision to plead guilty entails the waiver of some important, constitutional rights. These are "waivable-only" rights, in *Marin's* taxonomy. It is fitting that trial courts have a duty to implement those rights, which shield each defendant at the outset of every criminal proceeding. But after a court has fulfilled those duties and a defendant has made a valid waiver of those rights, it is appropriate that the defendant be required to take some affirmative action to don the armor again. The number of cases in which defendants want to "unwaive" their right to plead not guilty is small, the appearance of evidence that is inconsistent with guilt is unpredictable, the significance of such—evidence should be more apparent to the defense than to the trial court, and cases are common in which there is some evidence in the defendant's

favor but the defendant (like Alford) had validly chosen to plead guilty after weighing the advantage of such a plea against the chance of acquittal.

In this case the appellant did not waive his right to trial by jury, but he did waive his right to a plea of not guilty. It is not suggested that there was any error in the proceedings leading up to, and including, his plea of guilty. His strategies were to seek a verdict of second-degree murder by proving that he acted under the immediate influence of sudden passion arising from an adequate cause, and to prove that his punishment should be mitigated by voluntary intoxication that amounted to insanity. His attention was specifically called to the inconsistency between his plea of guilty and his testimony about lack of intent or knowledge. The inconsistency between his testimony and the other evidence has not escaped us. The appellant did not ask to withdraw his plea. If it had been in his interest to do so, he would have known it.

It is reasonable to put on such a defendant the requirement of timely seeking, in one way or another, to withdraw the plea of guilty. The appellant not having done so, he may not complain for the first time on appeal that the trial court did not do it for him.

The judgment of the court of appeals is affirmed.

---

**82.** *Moon v. State,* 572 S.W.2d 681 (Tex.Cr. App.1978).

**83.** *Aldrich v. State,* 104 S.W.3d 890 (Tex.Cr. App.2003).