COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-228-CR

 

DELORES
RAMON VELASQUEZ                                              APPELLANT

A/K/A RAMON VELASQUEZ

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 372ND
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  Introduction








Appellant Delores Ramon Velasquez a/k/a Ramon
Velasquez pleaded guilty to burglary of a habitation with intent to commit a
felony, and the trial court sentenced him to fifty years=
confinement.  In one point, Velasquez
argues that the trial court improperly considered his immigration status and
the future danger that he might pose to women in Mexico when it assessed his
sentence and, as a result, violated the Supremacy Clause of the United States
Constitution and the separation of powers doctrine under the Texas
constitution.  We affirm.

                          II.  Factual and Procedural Background

On May 1, 2007, Velasquez, intoxicated and under
the influence of alcohol and cocaine, forced his way into Emma Velasquez=s home
and stabbed her multiple times with a knife.[2]  Emma sustained numerous puncture wounds to
her left arm, upper left side, left chest, and left abdomen.  The police arrested Velasquez at the scene,
and the State charged him with burglary of a habitation with intent to commit a
felony.








On February 11, 2008, Velasquez entered an open
plea of guilty.  The trial court accepted
his plea but withheld sentencing and ordered that a pre-sentence investigation
(PSI) be conducted.  On May 15, 2008, the
Tarrant County Community Supervision and Corrections Department completed the
PSI and provided the trial court with a report. 
The report contained a detailed description of the assault and
documented Velasquez=s history of controlled
substance and alcohol abuse and his need for anger management counseling.  The report also included Velasquez=s
immigration status.  Specifically, the
report stated that Velasquez, a Mexican citizen, is an illegal alien due to an
expired work visa.

During the sentencing hearing, the trial court
had before it photos of Emma=s
injuries, the 911 tapes, and the PSI report. 
At the close of arguments, and after a detailed discussion by the trial
court as to its reasoning, the trial court sentenced Velasquez to fifty years=
confinement.  This appeal followed.

                                          III.  Discussion

In his sole point, Velasquez argues that the
trial court violated the Supremacy Clause and the separation of powers doctrine
when assessing his sentence by improperly considering Velasquez=s
immigration status and the future danger that he might pose to women in
Mexico.  Specifically, Velasquez directs
our attention to the trial court=s
following comments:

He=s [referring to defense
counsel] concerned about the punishment you will receive as a matter of federal
law and [the] reality that whenever you=re released from prison that you=ll be deported because of
the felony conviction, because according to the PSI any legal paperwork you had
has expired, and the likelihood of someone convicted of burglary with an
assault with a knife of getting legal papers, your lawyer is very smart and
knows is very slim, even if immigration laws are reformed or liberalized.

 








Unlike many young people
who my heart breaks that come here when they=re four and no one bothers to do the paperwork
right, I see them get deported and they don=t even speak EnglishCI meanCthey only speak English.  I speak more Spanish than they do.  And you at least are fluent and from that
aspect would not be a handicap even if you don=t have close associations
due to your lengthy residence in the United States. 

 

And that is proper to
argue as a de facto punishment that will happen, but for the same reason that
your rights were protected, the PSI was thorough.  If you wanted a trial, it would have been a
fair trial regardless of your nationality or place of birth or citizenship
status because that=s the way things happen
in a free country.  I=m not taking away points
for you because you weren=t born in the United States
for five generations, so I=m not going to give you points because of this
collateral punishment, but I will recognize it=s a reality.

 

But having said that, is it not proper to
consider the safety of the women in Mexico if you were deported?  Is it not proper to consider that if someone
can sit and torture and stab someone with a running phone call and screaming
and a crying child for four or five minutes and not stop when they=re
begged to, that the next time they feel betrayed are poked or punched or
prodded that that woman lives in some rural area of Durango, there=s not a
9-1-1 call to make to rush her to the hospital and save her life.  She might bleed to death because she might be
two hours away from the nearest hospital, with the existing transportation.

In response, the State argues that Velasquez did
not object to the trial court=s
comments regarding his immigration status and the safety of Mexican women and
therefore has forfeited this issue on appeal. 
We agree.

A.  Preservation of Error








To preserve a complaint for our review, a party
must have presented to the trial court a timely request, objection, or motion
that states the specific grounds for the desired ruling if they are not
apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Mosley v.
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999). 
Further, the trial court must have ruled on the request, objection, or
motion, either expressly or implicitly, or the complaining party must have
objected to the trial court=s
refusal to rule.  Tex. R. App. P.
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

The fact that Velasquez=s
argument rests upon constitutional grounds does not excuse him of the necessity
of preserving error for appellate review. 
See Stewart v. LaGrand, 526 U.S. 115, 119, 119 S. Ct.
1018, 1020 (1999) (holding appellant waived constitutional complaint); Rhoades
v. State, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (same); Curry v.
State, 910 S.W.2d 490, 496 n. 2 (Tex. Crim. App. 1995) (stating that
constitutional errors may be waived). 
Therefore, because there is nothing in the appellate record indicating
that Velasquez objected to the trial court=s
comments about his immigration status or the safety of women in Mexico, or even
to the sentence itself, we hold that Velasquez has failed to preserve any error
for our review.  See Tex. R. App.
P. 33.1(a)(1).

Furthermore, even assuming Velasquez preserved
this issue for appeal, the State argues that the doctrine of invited error
estops Velasquez from asserting it on appeal. 
We agree.








B.  Invited Error

The doctrine of Ainvited
error,@ as
distinguished from a waiver of error, is a type of estoppel.  Prystash v. State, 3 S.W.3d 522, 531
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102 (2000).  This doctrine estops a party from making an
appellate error of an action that it induced. 
Id.  As the Texas Court of
Criminal Appeals has explained,

Waiver might usefully be
distinguished from what is sometimes called Ainvited error.@  If a
party affirmatively seeks action by the trial court, that party cannot later
contend that the action was error.  This
is not really a waiver of error previously committed.  Rather, it is part of the definition of what
can constitute error, and quite reasonably defines error of which a party may
complain as excluding those actions of the trial court actually sought by the
party in that tribunal.

 

Id.

The
State points out that because Velasquez requested that the trial court take
into consideration his likely deportation, he cannot now object to the
consequences of that request. 
Specifically, the State directs our attention to the following comments
made by Velasquez=s counsel during closing
arguments:

 








He cannot apologize or
express his being sorry enough.  He would
like the opportunity to do it to the injured party, although I=ve explained to him that
it=s probably not likely to
happen.  But, you know, he has expressed
that through the [PSI report] and through family members.  He doesn=t know howChe wishes he could go back and undo what=s been done.  It=s obviously impossible for him to do, Your
Honor.  And obviously, we=re lucky. . . .  It could have been a significantly worse
outcome.  Both parties will move on with
their lives.  Obviously my client will have
to deal with whatever sentence is imposed by the Court.

 

After that, as you know,
as the Court knows, he will be formally deported and he will have to begin, if
he=s given a chance at a new
life or a different chapter in his life not in this country, not with his
family and not in a placeCand in a place that he hasn=t probably seen since he
was 12 or 13 years old, Your Honor. 

 

We would request that you
take all those matters into consideration. 
[Emphasis added.]

 

The emphasized portions of the excerpted comments
above make clear that Velasquez explicitly requested that the trial court
consider his deportation when assessing his sentence.  Therefore, because Velasquez actually
requested that the trial court take into consideration his deportation, we hold
that the doctrine of invited error estops him from now complaining about the
trial court=s actions, even if those actions
resulted in constitutional error.  See
Prystash, 3 S.W.3d at 531; Druery v. State, 225 S.W.3d 491, 505B06 (Tex.
Crim. App.), cert. denied, 128 S. Ct. 627 (2007); Norton v. State,
116 Tex. Crim. 48, 50, 31 S.W.2d 1087, 1088 (1930) (noting that A[a]
litigant on appeal or writ of error may not seek a reversal for error which he
himself has committed or invited, even though the error is fundamental@);
Franks v. State, 90 S.W.3d 771, 781 (Tex. App.CFort
Worth 2002, no pet.).  Accordingly, we
overrule Velasquez=s sole point.








                                          IV.  Conclusion

Having overruled Velasquez=s sole
point, we affirm the trial court=s
judgment.

 

PER
CURIAM

 

PANEL: MCCOY, DAUPHINOT,
and GARDNER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  April 30, 2009











[1]See Tex. R. App. P. 47.4.





[2]Velasquez and Emma began
having a Aphysical relationship@ after her husbandCVelasquez=s brotherCwent to prison.