Opinion filed July 26,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00238-CR 

                                                    __________

 

    THELMA MALDONADO A/K/A
THELMA MALDONADO LOMAS

                          A/K/A
TAMMY MALDONADO, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 104th District Court

 

                                                            Taylor
County, Texas

 

                                                    Trial
Court Cause No. 17196B 

 



 

                                            M
E M O R A N D U M   O P I N I O N

            Thelma
Maldonado a/k/a Thelma Maldonado Lomas a/k/a Tammy Maldonado entered an open
guilty plea to the intentional murder of Michael Myrick and a plea of “true” to
a prior felony of robbery alleged for enhancement.  She signed written plea
admonishments, a judicial confession admitting guilt, and a written waiver of
jury trial.  The trial court found appellant guilty of murder and assessed her
punishment at life in the Institutional Division of the Texas Department of
Criminal Justice.

            During
the disposition hearing, appellant’s videotaped statement to the investigating
officer was introduced into evidence.  Although she admitted stabbing the
victim, she asserted that she did not mean to hurt him.  In three issues,
appellant asserts that (1) the evidence was insufficient for conviction because
she lacked the necessary intent to commit murder; (2) the trial court should
have sua sponte withdrawn her guilty plea when it heard her statement that she
did not intend to kill the victim; and (3) the trial court erred in not
considering all the evidence when it accepted her guilty plea because her
statement created a fact issue concerning intent, an essential element of the
offense charged.  We affirm.

Background
Facts

            Michael
Myrick, the victim, invited some friends to his house on Briarwood Street in
Abilene for a party after they left a club when it closed.  Approximately
thirty people showed up for the party; a number of them were not part of
Myrick’s group of friends.

            One
of appellant’s sons, Albert Lomas; and his cousin, Jason Anderson; and a friend,
Kaleb Covarrubias, appeared at the party even though they were virtually
unknown to Myrick’s friends.[1] 
Several witnesses testified that Albert, Jason, and Kaleb were rude and
disrespectful to Myrick.  They were yelling obscenities at Myrick, and he told
them to leave.  The six or seven people in the Lomas group left through the
back door.  Witnesses then saw Covarrubias throw a beer bottle that shattered
Myrick’s front door.

            Myrick
went out his front door and chased the Lomas group as they left in their blue pickup.  
Amanda Powell and Modesto Lozano, two friends of Myrick, saw Myrick hanging on (or
being pulled in) to the passenger window of the pickup; he and the group in the
pickup were yelling at each other.  Amanda and Modesto pulled Myrick away from
the pickup as it sped off.  Myrick told them that the people in the pickup were
hitting him with a pipe of some sort.

            After
leaving Myrick’s house, Albert and his group went to appellant’s home to get
weapons.  There were at least six people in the pickup when it returned to
Myrick’s house, including appellant.  Appellant had a kitchen knife that was
approximately eight inches in length;  Albert had pliers; Edward Lomas had a
pipe; Jason had a shovel head with a shortened handle; and Star Gutierrez had a
tire iron.  Although the record does not reflect whether Kaleb had a weapon,
his DNA was on the metal pipe the officers found in appellant’s residence; the
pipe also had Myrick’s blood on it.

            Modesto
Lozano testified that, after the Lomas group left in their blue pickup, he and
his friends decided to also leave.  As they were driving north and stopped at
the next intersection, they saw the same blue pickup going back toward Myrick’s
house.  The time between the blue pickup leaving and returning was about
fifteen to twenty minutes.  Modesto made a U-turn at the intersection and
returned to Myrick’s house.  As he pulled up, he saw the group beating Myrick
with what appeared to be pipes.

            Modesto
said that he tried to get to Myrick to help, but Albert grabbed Modesto by the
arms and Edward hit him on the back of his head several times with a pipe.  Modesto
did not see anyone else fighting the blue-pickup group on Myrick’s behalf, and
he was unable to help Myrick.  Modesto received a gash on the back of his head
that required stitches and staples.  As Modesto went down, he called to his
friends to call the police.  The blue-pickup group immediately ran back to the pickup
and left.  Modesto attempted to give Myrick CPR, but Myrick was dead when the fire
department arrived.

            When
the police officers went to appellant’s house at around 4:00 a.m, members of the
blue-pickup group were talking and drinking beer in the living room.  Appellant
was drinking beer and had blood on her right pant leg; the blood was
subsequently identified as belonging to Myrick.  In her statement, appellant
said that she still had the knife in her hand when the group returned to her
house and that Edward, seeing that the knife had blood on it, took the knife
from her hand.  Edward told the officers that he put the knife behind the house,
and the officers found it there.  At the house, the officers also found the
pipe used by Edward.

            Myrick
was found dead in the street in front of his house.  Forensic evidence
established that, in addition to the fatal stab wound, Myrick had severe wounds
to his head from the shovel head and from the pipe.  The fatal wound inflicted
by appellant was a stab wound to the chest that severed the aorta.  Myrick’s
blood was found on several areas of the blue pickup.

            The
lead investigator was Detective Will Ford with the Criminal Investigation
Division of the Abilene Police Department.  He described the knife wound as a
deep penetrating stab wound that, according to the autopsy, struck Myrick’s
aorta or heart.  The fabric on Myrick’s shirt was not torn; the knife had sliced
through his shirt.  Detective Ford interviewed appellant at her home and then
took a formal statement from her a few hours later at the law enforcement center. 
In her statement, appellant said that she thought the group was taking her to
the store for cigarettes, that she grabbed the knife for protection, and that
she did not know they were going to Myrick’s house.  Detective Ford testified
that he did not believe appellant when she told him that she took the knife for
protection and that she did not know the group was going to Myrick’s house that
night.  In the video, he pointed out to appellant that she was “going to the
store” with four strong men and asked appellant why she also wanted to take a
knife.  Appellant said that she did not know why she took the knife.

            At
the disposition hearing, the trial court stated at the outset that the evidence
would be relevant to two cases before the court: (1) cause no. 17,196-B (the
murder charge) and (2) cause no. 16,501-B.  The State had filed a motion to
revoke appellant’s probation in the latter cause.  In cause no. 16,501-B, appellant
had been charged with theft in 2007 and was on community supervision.  Appellant’s
community supervision officer testified.  She related a conversation with
appellant concerning the events on the night of the murder.  Appellant told her
community supervision officer that she had been drinking, that she remembered
being surrounded by a lot of people, that she saw a man coming toward her, and that
she stabbed him.

Analysis

            No
trial court is authorized to render a conviction in a felony case consistent
with Article 1.15 of the Texas Code of Criminal Procedure based upon a
plea of guilty “without sufficient evidence to support the same.”  Tex. Code Crim. Proc. Ann. art. 1.15
(West 2005); Menefee v. State, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009).

            In
appellant’s videotaped statement that she gave to Detective Ford, she stated
that she asked her sons to take her to the store to get cigarettes when Jason
and his companions returned from Myrick’s house the first time.  Appellant
claimed that, when they loaded into Jason’s pickup, she did not know they were
going back to Myrick’s house.  “For protection,” she took a kitchen knife.  She
sat in the bed of the pickup with Kaleb and Albert; Jason drove with Edward and
Star in the cab of the pickup.  During the fight at Myrick’s house, appellant
claimed that she remained in the pickup and saw a man trying to get into the
cab to get to Star.  She got out of the pickup and “stabbed the guy” as he was
reaching for Star, but she “didn’t mean to hurt him.”

It is well-settled law that a trial court is not required
to sua sponte withdraw a guilty plea and enter a plea of not guilty when the
accused has waived a trial by jury and entered a guilty plea before the court. 
Aldrich v. State, 104 S.W.3d 890 (Tex. Crim. App. 2003); Thomas v.
State, 599 S.W.2d 823 (Tex. Crim. App. 1980); Moon v. State, 572
S.W.2d 681 (Tex. Crim. App. 1978); Gafford v. State, 262 S.W.3d
452 (Tex. App.—Texarkana 2008, pet. ref’d).  This
rule applies even if evidence is presented that raises an issue of fact as to
the guilt of the accused; in such a case, the trial court, as the trier of
fact, may decide the issue of the accused’s guilt without withdrawing the plea.
 Thomas, 599 S.W.2d at 824; Moon, 572 S.W.2d at 681.

            The Court of Criminal Appeals has more
recently clarified this area of the law with respect to a guilty plea that is
made to a jury.  Mendez v. State, 138 S.W.3d 334 (Tex. Crim. App.
2004).  The facts and appellant’s arguments are substantially the same
as those in Mendez.  There was a jury trial in Mendez as opposed
to the bench trial in the case before us; however, the Mendez court set
forth principles that apply in both situations.  It was undisputed that Mendez
shot and killed the victim with whom he had been having a sexual relationship. 
Mendez testified that he shot her but that he did not mean to shoot her, only
to scare her.  Like appellant in this case, Mendez claimed that he was drunk at
the time.  On appeal, Mendez claimed that the trial court should have sua
sponte withdrawn his guilty plea after his testimony raised an issue as to his
guilt.  The Court of Criminal Appeals held that the trial court had no duty to
change his plea on the trial court’s own motion.  Mendez, 138 S.W.3d at
336.

            The Mendez
court noted that a defendant has the right to withdraw a plea of guilty in a
timely fashion, whether the trial is with or without a jury.  A defendant’s
decision to plead guilty “entails the waiver of some important, constitutional
rights”; however, “[t]hese are ‘waivable-only’ rights” in the taxonomy of Marin
v. State, 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993).  Mendez,
138 S.W.3d at 350.  Once a court has fulfilled its duties and a defendant has
made a valid waiver of his or her rights, “it is appropriate that the defendant
be required to take some affirmative action to don the armor again.”  Mendez,
138 S.W.3d at 350.  The trial court had no duty to withdraw appellant’s plea of
guilty sua sponte.  See Mendez, 138 S.W.3d at 350; Aldrich, 104
S.W.3d at 896.  Because appellant took no action to withdraw her guilty plea,
she may not complain about it for the first time on appeal.  Mendez, 138
S.W.3d at 350; Aldrich, 104 S.W.3d at 896; see Tex. R. App. P. 33.1. 

            Appellant
argues that the evidence was legally insufficient to sustain her conviction and
that the trial court erred in not considering all the evidence because
appellant’s statement created a fact issue on an essential element of murder.  To
support an open plea of guilty, the State must introduce evidence into the
record showing the guilt of the defendant, and “in no event shall a person
charged be convicted upon his plea without sufficient evidence to support the
same.”  Article 1.15.  This evidence may be stipulated if the defendant
consents in writing, in open court.  Id.  An appellate court will affirm
the conviction if the judicial confession, the stipulation of evidence, or the
evidence introduced embraces every essential element of the offense charged and
is sufficient to establish the defendant’s guilt.  Id.; Menefee,
287 S.W.3d at 13.  A judicial confession, standing
alone, is sufficient to sustain a conviction upon a plea of guilty if such
judicial confession embraces the essential elements of the offense.  Menefee,
287 S.W.3d 13–14; Dinnery v. State, 592 S.W.2d 343, 353 (Tex. Crim. App.
1980).

            The evidence in this case, which included a
written stipulation of evidence and a judicial confession of guilt in open
court, is more than sufficient to support the trial court’s
finding of guilt.  Even the brief summary of the evidence earlier in
this opinion demonstrates that the evidence was legally sufficient to sustain
appellant’s conviction.  The trial court, as the trier of fact, was the
exclusive judge of the credibility of the witnesses and the weight to be given
to their testimony.  Joseph v. State, 897 S.W.2d 374, 376 (Tex. Crim.
App. 1995).  The trial court no doubt found appellant’s story lacking
credibility.  Appellant admitted that she was going with a group that included
four men and Star; those four and Star had weapons.  Appellant’s version
conflicts with Modesto’s and Stephanie Delarosa’s version; Stephanie was the
one who called the police when Modesto called to her.  The only reasonable
explanation for appellant taking her kitchen knife was for it to be her weapon
as the group returned to Myrick’s house.  The evidence of appellant’s guilt is
more than sufficient to support appellant’s conviction.

Due
process of law is not denied by a conviction on a plea of guilty when there is
a strong factual basis for the plea and the defendant clearly expressed a
desire to enter the guilty plea despite a professed belief in innocence.  Mendez,
138 S.W.3d at 344.  Appellant’s three issues are overruled.

This Court’s Ruling

The
judgment of the trial court is affirmed.

 

 

July 26, 2012                                                                           TERRY
McCALL

Do not publish.  See Tex. R. App. P. 47.2(b).                                  JUSTICE

Panel consists of: Wright, C.J.,

McCall, J., and Kalenak, J.









[1]Appellant indicates in her brief that another son,
Edward Lomas, and his girlfriend, Star, were drinking with appellant at appellant’s
home and initially were not at the party; they later went with the group to
attack Myrick.  That is also this court’s impression from appellant’s
videotaped statement.  However, it appears from Modesto Lozano’s testimony that
Edward was at the party and was part of the group arguing with Myrick in his
kitchen.  The evidence is consistent that Edward was with the group when they
returned to Myrick’s house.