

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


### NO. 2-06-185-CR


EVERITT HANSEL HOWARD JR.                                    APPELLANT
A/K/A EVERETT H. HOWARD JR.


V.


THE STATE OF TEXAS                                                STATE


------------


FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY


------------


## MEMORANDUM OPINION[1]


------------


Appellant Everitt Hansel Howard Jr. a/k/a Everett H. Howard Jr. appeals

from his conviction and sixty-year sentence for robbery by threat. In two

points, he argues that the trial court erred by beginning voir dire when one jury

panelist was missing and that the evidence is legally insufficient to support his

conviction. We affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

**Factual and Procedural History**

Larry Cline testified that at the time of the robbery in question, he was an assistant manager of a Radio Shack store in Fort Worth. He testified that on December 31, 2005, at about 2:00 p.m., a man walked into the store wearing a ski mask, gloves, and a red sweatshirt and told Cline to open the cash register. The man motioned underneath his shirt as though he were reaching for something; Cline said, "I didn't want to press it, didn't want to find out whether it was a gun." Cline testified that he felt threatened and was in fear of imminent bodily injury. Cline opened the register, and the man took all of the money and walked out of the store. He testified that a customer check payable to Radio Shack in the amount of $60.52 was also missing after the robbery. Later, police brought the check back to the store, along with almost the exact amount of cash taken in the robbery.

Myra Sanchez testified that she was working at the same Radio Shack on the day of the robbery. When the robber approached the cash register, Sanchez fled to the back office, pressed the "record" button on the store's security camera, and watched the robbery on a video monitor. The security video was admitted into evidence and played for the jury. She said that when the robber entered the store, his left arm "was just hanging" but his right hand

2

was "clenched towards the side of his body." Sanchez said that she was afraid that the robber might cause her bodily harm or kill her.

Dwayne Modosett was the store manager on the day of the robbery. He saw the robber enter the store, approach Cline, and take the money out of the cash register. The robber was wearing a dark red or maroon sweatshirt or sweater, gloves, and a ski mask. Modosett testified that the robber clutched his hand to his side, which made Modosett think he had a gun. When the robber left the store, Modosett saw him cut across a parking lot and remove the ski mask. He followed the robber for a couple of blocks, by which time "there were already cops all over the area," so he returned to the store. Modosett said the police later returned with about $2,200. When the police returned the money, they had a person in the back seat of their squad car; Modosett said it "looked pretty much like the same guy."

Marvin Roberson testified that at about the time of the robbery, he saw a man wearing a burgundy pullover-type shirt walking down the street near Roberson's house. The man broke into a run and pulled off the burgundy shirt, revealing a white sleeveless t-shirt underneath. Roberson watched the man cut between two nearby houses. A police car drove past, and Roberson got into his truck, followed the police car, and waived it down. The officer told him that

3

he was chasing a man involved in a robbery, and Roberson told the officer where he had seen the man run.

Fort Worth police officer B.A. Gentry is the police officer to whom Roberson made his report. Gentry drove to the house where Roberson had last seen the man and called for backup. An officer aboard a police helicopter, which was hovering overhead, told Gentry via radio that a man wearing blue jeans and a white t-shirt was running from the back of the house. Gentry ran to the backyard and saw a man jumping over the back fence. Gentry chased and captured the man, whom he identified as Appellant. He handcuffed Appellant, patted him down for weapons, and put him in the back seat of officer Patrick Conaway's patrol car.

Conaway drove Appellant back to the residence, and Gentry walked back. Gentry then removed Appellant from Conaway's car and checked the cushions of the seat where Appellant had been sitting. He explained that Fort Worth patrol cars have padded seats, rather than molded seats, and that "many times when you arrest somebody, they stuff narcotics, they stuff money, they stuff any kind of evidence, guns, underneath the back . . . seat;" therefore, he always checks for contraband in the back seat of a patrol car after it transports a suspect. When he lifted up the seat where Appellant had been sitting, he found a large amount of cash and a check from Radio Shack. Gentry then arrested

4

Appellant and conducted a search incident to arrest. He found another large amount of cash in Appellant's right front pocket. Gentry said this was significant because the Radio Shack security video showed the robber removing money from the register and putting it in his right front pocket. The video also showed that the robber was wearing shoes like those Appellant was wearing at the time of his arrest. Gentry said that only five minutes elapsed between the time he heard the robbery reported on the dispatch radio at 2:07 p.m. and the time he had Appellant in custody. On cross-examination, Gentry explained that in his initial pat-down of Appellant, he was only looking for weapons and that the search incident to Appellant's arrest was much more thorough.

Officer Conaway testified that, in accordance with Fort Worth Police Department practice, he had searched his patrol vehicle thoroughly when he went on duty on the day of the robbery and found no contraband inside. He said that he did not see Appellant put the money under the car seat, but explained that a metal partition blocked part of his view and that he had a limited view of Appellant in his rear-view mirror.

Officer Martin Chazaretta testified that he was the first officer to count the cash found in Conaway's car and on Appellant's person. He counted $2,229; the store reported that $2,228.04 was missing in the robbery.

5

The grand jury indicted Appellant for robbery by threatening Cline and Sanchez or placing them in fear of imminent bodily injury or death, and the indictment alleged a prior conviction for robbery causing bodily injury. A jury convicted Appellant and assessed his punishment at sixty years' confinement, and the trial court sentenced Appellant accordingly.

**Discussion**

**1. Voir dire**

In his first point, Appellant argues that the trial court abused its discretion by starting voir dire when one panelist was not present. The State replies that Appellant waived his complaint by failing to object to the trial court's decision to proceed with voir dire without the missing panelist.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

6

The record shows that at the start of voir dire, the trial court noted, "We're . . . having some trouble finding [panelist] No. 37. . . . He's probably just running late. So we can start without him, and if I can qualify him without holding things up too much, I will do it." Both counsel for Appellant and for the State responded, "Okay." The record does not mention panelist number 37 again.

By failing to object to the trial court's decision to proceed with voir dire without panelist number 37, Appellant forfeited his complaint. Therefore, we overrule his first point.

## 2. Legal sufficiency

In his second point, Appellant argues that the evidence is legally insufficient to support his conviction. Specifically, Appellant contends that the evidence is insufficient to identify him as the robber and insufficient to prove that the robber intentionally or knowingly threatened the Radio Shack store personnel.

When reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*

7

*v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Under penal code section 29.02, a person commits an offense if, in the course of committing a theft, and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02 (Vernon 2003).

We hold that the evidence would permit a rational trier of fact to conclude beyond a reasonable doubt that Appellant was the robber. The eyewitnesses said the robber was wearing a red or maroon sweatshirt. Immediately after the robbery, Roberson saw a man run from the store's direction, rip off a red shirt, and run between two houses. Officer Gentry chased Appellant when he fled from one of the houses. After Officer Conaway transported Appellant in his squad car, Gentry found money and the stolen Radio Shack check in the back seat. He found more money in Appellant's pocket, and added together, the two sums of cash equaled the sum the store reported missing. Appellant was wearing shoes similar to those worn by the robber.

Appellant contends that the fact that Gentry failed to find any cash on Appellant when he patted Appellant down when he first apprehended him and the fact that he was handcuffed and in Conaway's presence for the short car

8

ride back to the house create a reasonable doubt that Appellant had the cash on his person and secreted it in Conaway's car. But Gentry testified that his initial pat down was cursory and that he was only looking for weapons, as opposed to the subsequent and more thorough search incident to arrest. And Conaway testified that he did not have a good view of Appellant as he drove him back to the house. Viewed in the light most favorable to the prosecution, the evidence is legally sufficient to identify Appellant as the robber.

In a single sentence—with no reference to any authority—Appellant also argues that the evidence is insufficient to support the jury's finding that he threatened Cline or Sanchez or placed them in fear of imminent bodily injury. Although police officers found no weapons on Appellant when they apprehended him, both Cline and Sanchez testified that Appellant held his hand in a way that made them think he had a gun and that they felt threatened and feared imminent bodily injury. Moreover, Appellant was wearing gloves and a ski mask and demanded that Cline open the register. Under other circumstances, his hand gestures might have been ambiguous; but combined with his appearance and actions, they are enough to allow a rational trier of fact to conclude beyond a reasonable doubt that Appellant intentionally or knowingly threatened Cline and Sanchez or placed them in fear of imminent bodily injury. We overrule Appellant's second point.

9

**Conclusion**

Having overruled both of Appellant's points, we affirm the trial court's judgment.


                      ANNE GARDNER
                      JUSTICE

PANEL A:   CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED:  April 3, 2008

10