COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-06-185-CR

 

 

EVERITT HANSEL HOWARD JR.                                             APPELLANT

A/K/A
EVERETT H. HOWARD JR.

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Everitt Hansel
Howard Jr. a/k/a Everett H. Howard Jr. appeals from his conviction and
sixty-year sentence for robbery by threat. 
In two points, he argues that the trial court erred by beginning voir
dire when one jury panelist was missing and that the evidence is legally
insufficient to support his conviction. 
We affirm.








                                Factual and Procedural History

Larry Cline testified that at
the time of the robbery in question, he was an assistant manager of a Radio
Shack store in Fort Worth.  He testified
that on December 31, 2005, at about 2:00 p.m., a man walked into the store
wearing a ski mask, gloves, and a red sweatshirt and told Cline to open the
cash register.  The man motioned
underneath his shirt as though he were reaching for something; Cline said, AI didn=t want to
press it, didn=t want to
find out whether it was a gun.@  Cline testified that he felt
threatened and was in fear of imminent bodily injury.  Cline opened the register, and the man took
all of the money and walked out of the store. 
He testified that a customer check payable to Radio Shack in the amount
of $60.52 was also missing after the robbery. Later, police brought the check
back to the store, along with almost the exact amount of cash taken in the
robbery. 








Myra Sanchez testified that
she was working at the same Radio Shack on the day of the robbery.  When the robber approached the cash register,
Sanchez fled to the back office, pressed the Arecord@ button on
the store=s security camera,
and watched the robbery on a video monitor. 
The security video was admitted into evidence and played for the
jury.  She said that when the robber
entered the store, his left arm Awas just hanging@ but his
right hand was Aclenched
towards the side of his body.@  Sanchez said that she was
afraid that the robber might cause her bodily harm or kill her. 

Dwayne Modosett was the store
manager on the day of the robbery.  He
saw the robber enter the store, approach Cline, and take the money out of the
cash register.  The robber was wearing a
dark red or maroon sweatshirt or sweater, gloves, and a ski mask.  Modosett testified that the robber clutched
his hand to his side, which made Modosett think he had a gun.  When the robber left the store, Modosett saw
him cut across a parking lot and remove the ski mask.  He followed the robber for a couple of
blocks, by which time Athere were
already cops all over the area,@ so he returned to the store. 
Modosett said the police later returned with about $2,200.  When the police returned the money, they had
a person in the back seat of their squad car; Modosett said it Alooked pretty much like the same guy.@  








Marvin Roberson testified
that at about the time of the robbery, he saw a man wearing a burgundy
pullover-type shirt walking down the street near Roberson=s house.  The man broke into a
run and pulled off the burgundy shirt, revealing a white sleeveless t-shirt underneath.  Roberson watched the man cut between two
nearby houses.  A police car drove past,
and Roberson got into his truck, followed the police car, and waived it down.  The officer told him that he was chasing a
man involved in a robbery, and Roberson told the officer where he had seen the
man run. 

Fort Worth police officer
B.A. Gentry is the police officer to whom Roberson made his report.  Gentry drove to the house where Roberson had
last seen the man and called for backup. 
An officer aboard a police helicopter, which was hovering overhead, told
Gentry via radio that a man wearing blue jeans and a white t-shirt was running
from the back of the house.  Gentry ran
to the backyard and saw a man jumping over the back fence.  Gentry chased and captured the man, whom he
identified as Appellant.  He handcuffed
Appellant, patted him down for weapons, and put him in the back seat of officer
Patrick Conaway=s patrol
car.  








Conaway drove Appellant back
to the residence, and Gentry walked back. Gentry then removed Appellant from
Conaway=s car and checked the cushions of the seat where Appellant had been
sitting.  He explained that Fort Worth
patrol cars have padded seats, rather than molded seats, and that Amany times when you arrest somebody, they stuff narcotics, they stuff
money, they stuff any kind of evidence, guns, underneath the back . . . seat;@ therefore, he always checks for contraband in the back seat of a
patrol car after it transports a suspect. 
When he lifted up the seat where Appellant had been sitting, he found a
large amount of cash and a check from Radio Shack.  Gentry then arrested Appellant and conducted
a search incident to arrest.  He found
another large amount of cash in Appellant=s right front pocket.  Gentry
said this was significant because the Radio Shack security video showed the
robber removing money from the register and putting it in his right front
pocket.  The video also showed that the
robber was wearing shoes like those Appellant was wearing at the time of his
arrest.  Gentry said that only five
minutes elapsed between the time he heard the robbery reported on the dispatch
radio at 2:07 p.m. and the time he had Appellant in custody.  On cross-examination, Gentry explained that
in his initial pat-down of Appellant, he was only looking for weapons and that
the search incident to Appellant=s arrest was much more thorough. 

Officer Conaway testified
that, in accordance with Fort Worth Police Department practice, he had searched
his patrol vehicle thoroughly when he went on duty on the day of the robbery
and found no contraband inside.  He said
that he did not see Appellant put the money under the car seat, but explained
that a metal partition blocked part of his view and that he had a limited view
of Appellant in his rear-view mirror. 

Officer Martin Chazaretta
testified that he was the first officer to count the cash found in Conaway=s car and on Appellant=s person.  He counted $2,229;
the store reported that $2,228.04 was missing in the robbery.  








The grand jury indicted
Appellant for robbery by threatening Cline and Sanchez or placing them in fear
of imminent bodily injury or death, and the indictment alleged a prior
conviction for robbery causing bodily injury.  A jury convicted Appellant and assessed his
punishment at sixty years=
confinement, and the trial court sentenced Appellant accordingly.  

                                             Discussion

1.     Voir dire

In his first point, Appellant
argues that the trial court abused its discretion by starting voir dire when
one panelist was not present.  The State
replies that Appellant waived his complaint by failing to object to the trial
court=s decision to proceed with voir dire without the missing panelist.

To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion. 
Tex. R. App. P.
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998)
(op. on reh=g), cert. denied, 526 U.S. 1070
(1999).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court=s refusal to
rule.  Tex.
R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004).








The record shows that at the
start of voir dire, the trial court noted, AWe=re . . .
having some trouble finding [panelist] No. 37. . . . He=s probably just running late. 
So we can start without him, and if I can qualify him without holding
things up too much, I will do it.@  Both counsel for Appellant and
for the State responded, AOkay.@  The record does not mention
panelist number 37 again.

By failing to object to the
trial court=s decision
to proceed with voir dire without panelist number 37, Appellant forfeited his
complaint.   Therefore, we overrule his
first point.

2.     Legal sufficiency

In his second point,
Appellant argues that the evidence is legally insufficient to support his
conviction.  Specifically, Appellant
contends that the evidence is insufficient to identify him as the robber and
insufficient to prove that the robber intentionally or knowingly threatened the
Radio Shack store personnel.








When reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Under penal code section
29.02, a person commits an offense if, in the course of committing a theft, and
with intent to obtain or maintain control of the property, he intentionally or
knowingly threatens or places another in fear of imminent bodily injury or
death.  Tex.
Penal Code Ann. ' 29.02 (Vernon 2003).

We hold that the evidence
would permit a rational trier of fact to conclude beyond a reasonable doubt
that Appellant was the robber.  The
eyewitnesses said the robber was wearing a red or maroon sweatshirt.  Immediately after the robbery, Roberson saw a
man run from the store=s direction,
rip off a red shirt, and run between two houses.  Officer Gentry chased Appellant when he fled
from one of the houses.  After Officer
Conaway transported Appellant in his squad car, Gentry found money and the
stolen Radio Shack check in the back seat. 
He found more money in Appellant=s pocket, and added together, the two sums of cash equaled the sum the
store reported missing.  Appellant was
wearing shoes similar to those worn by the robber.








Appellant contends that the
fact that Gentry failed to find any cash on Appellant when he patted Appellant
down when he first apprehended him and the fact that he was handcuffed and in
Conaway=s presence for the short car ride back to the house create a
reasonable doubt that Appellant had the cash on his person and secreted it in
Conaway=s car.  But Gentry testified
that his initial pat down was cursory and that he was only looking for weapons,
as opposed to the subsequent and more thorough search incident to arrest.  And Conaway testified that he did not have a
good view of Appellant as he drove him back to the house.  Viewed in the light most favorable to the
prosecution, the evidence is legally sufficient to identify Appellant as the
robber.

In a single sentenceCwith no reference to any authorityCAppellant also argues that the evidence is insufficient to support the
jury=s finding that he threatened Cline or Sanchez or placed them in fear
of imminent bodily injury.  Although
police officers found no weapons on Appellant when they apprehended him, both
Cline and Sanchez testified that Appellant held his hand in a way that made
them think he had a gun and that they felt threatened and feared imminent
bodily injury.  Moreover, Appellant was
wearing gloves and a ski mask and demanded that Cline open the register.  Under other circumstances, his hand gestures
might have been ambiguous; but combined with his appearance and actions, they
are enough to allow a rational trier of fact to conclude beyond a reasonable
doubt that Appellant intentionally or knowingly threatened Cline and Sanchez or
placed them in fear of imminent bodily injury. 
We overrule Appellant=s second point.








                                             Conclusion

Having overruled both of
Appellant=s points, we
affirm the trial court=s judgment. 

 

 

ANNE GARDNER

JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  April 3, 2008

 











[1]See Tex. R. App. P. 47.4.