

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00037-CR

EUGENE HARRIS TAYLOR                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Eugene Harris Taylor of indecency with a child by contact and assessed his punishment at eight years' confinement, probated. The trial court sentenced him accordingly, setting the probationary period at ten years.

Appellant brings three points on appeal, arguing that the trial court erred by improperly limiting his cross-examination of the complainant and by permitting a

---

[1]*See* Tex. R. App. P. 47.4.

detective to testify concerning the credibility of the complainant. Because the trial court did not reversibly err, we affirm the trial court's judgment.

**Facts**

Appellant was charged by indictment with one count of indecency with a child. At the time of the offense, the complainant, V.W., was a freshman in high school. Appellant was a bus driver for the school district. Appellant told V.W. that he would be driving one of the buses to an upcoming football game and offered to give her a ride.

On the day of the game, V.W. met Appellant at the school. Appellant was scheduled to drive an equipment truck for the band to the football game. V.W. rode with him. On the drive, Appellant told V.W. that she had nice breasts and asked her what she thought of dating older men. He also poked her left breast. V.W. texted A.R., her friend and former girlfriend, during the drive and told her what was happening. When Appellant and V.W. arrived at the game, Appellant put his hand inside her shirt and bra, grabbed one breast, and then touched the other one before she moved.

After Appellant got out of the truck, V.W. called A.R. V.W. then left the truck and found A.R. V.W. told A.R. that Appellant had touched her breasts. A.R. told her brother's then girlfriend, Mindy, what V.W. had told her and arranged for Mindy to give V.W. a ride home.

At trial, Appellant's defense counsel asked V.W. if Mindy was "induced or persuaded" to give her a ride because of her claim that Appellant had fondled her

2

and whether Mindy was aware of V.W.'s claims. The State objected twice that the question called for speculation, and the trial court sustained the objections. Appellant's defense counsel also attempted to cross-examine V.W. about whether she was "substantially depressed" over her breakup with A.R. when she made the allegations. The questioning was part of his defense strategy to establish that V.W. had made up the allegations to elicit sympathy from A.R. The trial court sustained the State's objection to that line of questioning on grounds of relevance.

The State asked Kevin Rogers of the Azle Police Department, who had investigated V.W.'s allegations, whether "at any time since then, [he had] had any concerns about the case that [he] filed?" Appellant made a timely objection, and the trial court sustained the objection. The State then asked Rogers whether he had any concerns whether the claim might be made up. Appellant again objected. The trial court initially sustained the objection, but, after the State argued that it was asking for the officer's opinion about his investigation based on his training and experience, the trial court allowed the question. The State then asked Rogers, "[B]ased on your training and experience and based on the entirety of your investigation, did you have any concerns that this was made up?" Rogers answered, "No."

**Cross-examination**

In his first two points, Appellant argues that the trial court reversibly erred by disallowing the cross-examination of V.W. regarding her motive and state of mind in telling A.R. that he had fondled her. The State argues that Appellant failed to preserve his constitutional complaints for review because he raised no constitutional complaints to the trial court. We agree.[2] We nevertheless address his bare evidentiary complaints.

Defense counsel had asked V.W. whether Mindy was aware of any of the abuse allegations. When the State's objection to speculation was sustained, defense counsel then asked whether V.W. had discussed any of the "inappropriate activities" with Mindy. Her answer was "No." When the State later asked A.R. on direct examination whether the fondling allegations had been used to persuade Mindy to give V.W. a ride home from the game, A.R. admitted that she had told Mindy "the gist of it," "that [V.W.] got sexually molested because that's what [V.W.] told her . . . ."

We hold that the trial court did not err by sustaining the State's objections to defense counsel's questions posed to V.W. regarding Mindy as those complained-of questions were phrased because any awareness that Mindy had

---

[2]*See* Tex. R. App. P. 33.1(a); *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004); *see also Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009).

of the abuse allegations was beyond V.W.'s personal knowledge.[3] When defense counsel limited his question to whether V.W. had discussed the activities with Mindy, that question called for information within V.W.'s personal knowledge and was properly allowed. Additionally, the evidence that Appellant sought to put before the jury came in during the testimony of A.R., so even if the trial court had erred, such error would have been harmless.[4] We overrule Appellant's first point.

As for the questions regarding V.W.'s state of mind, defense counsel made a bill of exceptions to clarify the evidence that he was eliciting and his purpose for eliciting it. He showed that V.W. and A.R. had been in a romantic relationship that had fallen upon rocky ground. V.W. had posted messages on her MySpace page stating that she was horribly depressed by her loss of A.R. Although V.W. was vague about the time period during which she had posted this personal information about her state of mind, she, nevertheless, had been prolific in her expressions of pain, all of which had been admitted as part of the bill.

Appellant's theory was that V.W. concocted the story of being fondled in an attempt to regain A.R.'s affections. But after making his offer of proof, defense counsel did not seek to admit the testimony he had elicited. He acquiesced in the trial court's ruling. In order to preserve Appellant's complaint for appellate

---

[3]*See* Tex. R. Evid. 602; *Kelly v. State*, 321 S.W.3d 583, 598 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

[4]*See* Tex. R. App. P. 44.2(b); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

review, he was required to make the trial court aware of his complaint.[5]  As the

Texas Court of Criminal Appeals has explained,

> Rule of Evidence 103(a)(2) limits the scope of issues which may be appealed when evidence is limited or excluded.  Error may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, *and . . . the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked*.  The offer of proof may be in question-and-answer form or in the form of a concise statement by counsel.  An offer of proof to be accomplished by counsel's concise statement must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible.  The primary purpose of the offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful.  A secondary purpose is to permit the trial judge to reconsider his ruling in light of the actual evidence.
>
> This court has recognized a distinction between the general rule in Rule 103(a)(2) and the case in which the defendant is not permitted to question a State's witness about matters that might affect the witness's credibility.
>
> In the latter case, the defendant need not show what his cross-examination of the witness would have affirmatively established; he must merely establish what general subject matter he desired to examine the witness about during his cross-examination and, if challenged, show on the record why such should be admitted into evidence.  In such a case the trial court's ruling has prevented a defendant from questioning a State's witness about subject matters which affect the witness's credibility, that is, matters which might show malice, ill feeling, ill will, bias, prejudice, or animus.[6]

---

[5]*See* Tex. R. App. P. 33.1(a)(1), (2), 33.2(a); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *Mendez*, 138 S.W.3d at 341.

[6]*Holmes v. State,* 323 S.W.3d 163, 168 (Tex. Crim. App. 2009) (emphasis added) (citations and internal quotation marks omitted).

Common sense suggests that if a party makes an offer of proof in an attempt to convince a trial court that a ruling is erroneous or to persuade a trial court to reconsider the ruling in light of the actual evidence, the party must, in addition to showing the trial court what the actual testimony would be, explain why the ruling is erroneous or, at a minimum, ask the trial court to reconsider the ruling after making the offer of proof. This requirement is based on the theory of party responsibility explained in *Reyna v. State*.[7] Because Appellant neither explained why the trial court's ruling was erroneous nor asked the trial court to reconsider the ruling, he has failed to preserve his complaint for appellate review.

We overrule Appellant's first and second points.

**Opinion of Credibility**

In his third point, Appellant argues that the trial court erred by permitting a detective to testify that he had no concerns that the case was made up. While the investigating detective, Rogers, was testifying, the State asked him whether he had any concerns that the complainant's accusations were made up. The following exchange took place:

> Q    Okay.  And at any time since then, have you had any concerns about the case that you filed?
>
> [TRIAL COUNSEL]:  Objection, improper opinion, not relevant whether the officer has concerns.
>
> THE COURT:  Sustained.

---

[7]168 S.W.3d 173, 177 (Tex. Crim. App. 2005).

[TRIAL COUNSEL]: Thank you.

Q . . . Did you have any concerns—through your investigation, did you have any concerns about whether or not you didn't have an offense or that this might be made up?

[TRIAL COUNSEL]: Same objection, Your Honor.

THE COURT: Sustained.

[PROSECUTOR]: May I respond, Judge?

THE COURT: Yes.

[PROSECUTOR]: I'm just asking—confining it to his investigation, if he ever had during his investigation any concerns about it being made up. I'd ask that I be allowed to ask that question.

[TRIAL COUNSEL]: Your Honor, that's an improper opinion. It's not relevant. It's evading [sic] province of the [j]ury and—

[PROSECUTOR]: I would say that it was based on his training and experience. It's an opinion about his investigation.

[TRIAL COUNSEL]: Well, in that vein, it's given greater emphasis although there is no expertise in that area or opinions of the validity or invalidity, no expertise in matters as juries.

THE COURT: I'm going to allow the question.

Q . . . Detective, based on your training and experience and based on the entirety of your investigation, did you have any concerns that this was made up?

A No, sir.

The Texas Court of Criminal Appeals has held that "Rule 702 does not permit an expert to give an opinion that the complainant or class of persons to

which the complainant belongs is truthful."[8]  The State came very close to and indeed, may have nudged a toe across the line in asking Rogers whether, in his expert opinion, he had any concern about "it being made up."  But the State did not ask any further questions about Rogers's opinions of the veracity of V.W.'s allegations.  And, in any event, no further mention of Rogers's opinion was made, either in questioning or in final argument.  Even if we were to hold that the trial court erred by allowing the State to inquire whether Rogers ever had the feeling that "it" or "this" was made up, we can find nothing in the record to support a conclusion that this testimony affected Appellant's substantive rights in either stage of the trial.[9]  We overrule Appellant's third point.

**Conclusion**

Having overruled Appellant's three points on appeal, we affirm the trial court's judgment.

LEE ANN DAUPHINOT<br>
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 1, 2012

---

[8]*Yount v. State,* 872 S.W.2d 706, 712 (Tex. Crim. App. 1993).

[9]*See* Tex. R. App. P. 44.2(b); *Solomon*, 49 S.W.3d at 365; *Johnson*, 967 S.W.2d at 417; *King*, 953 S.W.2d at 271.