**Dissenting Opinion issued September 26, 2019**



In The

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-18-01140-CR**

———————————

**CECILIO MENDOZA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 83463-CR**

## DISSENTING OPINION

I respectfully dissent from the majority's opinion remanding this case for a new trial. A jury convicted appellant, Cecilio Mendoza, of twelve offenses, including three counts of aggravated sexual assault of a child, three counts of

indecency with a child by contact, one count of sexual assault of a child, and five counts of prohibited sexual conduct. Mendoza pleaded not guilty to all counts except Count Eleven, a charge of indecency with a child. During trial, he sought to withdraw his guilty plea to that count, but the trial court refused to withdraw the plea. The majority correctly holds that the trial court's refusal to withdraw Mendoza's guilty plea to Count Eleven was constitutional error. But it refuses to find the error harmless. Instead, it reverses and remands for a new trial on Count Eleven. I would not. I believe that the error was harmless under the standard for constitutional error and that the majority raises the standard, setting bad precedent for this Court.

**Background**

A grand jury indicted Mendoza for a total of thirteen sexual offenses arising out of improper conduct with his minor daughter: three counts of aggravated sexual assault of a child, three counts of indecency with a child by sexual contact, one count of sexual assault of a child, and six counts of prohibited sexual conduct. After voir dire but before the reading of the indictment, the State abandoned Count Nine, a count of prohibited sexual conduct. The State proceeded to trial on the remaining twelve counts.

When the indictment was read in the presence of the jury, Mendoza pleaded not guilty to all but one of the remaining twelve counts. He pleaded guilty to Count Eleven, an allegation that he had committed the offense of indecency with a child by

2

contact, specifically by touching his daughter's breasts. After receiving this plea, the trial court questioned Mendoza outside the presence of the jury. Mendoza stated that no one forced him to plead guilty to Count Eleven, that he pleaded guilty freely and voluntarily, and that he was pleading guilty because he was guilty. The trial court accepted Mendoza's guilty plea and found "that it is freely and voluntarily made."

Mendoza's daughter, who was fourteen at the time of trial, testified that Mendoza began touching her inappropriately when she was nine years old and continued to do so over the course of several years. She described Mendoza's actions, which included, among other things, touching her breasts with his hands. She testified that if she tried to push Mendoza away, "he would use his force to hold [her] down." She was unable to state with specificity how many times Mendoza had assaulted her, except to say that it happened "many times," "a lot of times," and that she "can't count them."

Mendoza's wife, Guadalupe, testified that, around one or two months before their daughter made an outcry of sexual abuse in December 2017, she noticed Mendoza looking at their daughter "in a racy kind of way," and she confronted Mendoza about this and told him that she would not tolerate this conduct. When their daughter later made her outcry to Guadalupe, she was crying, and Guadalupe called the police in response. After she spoke with the police, Guadalupe again confronted Mendoza, demanding to know how he could abuse their daughter. Mendoza replied,

"[A]sk your daughter." Guadalupe stated that Mendoza blamed their daughter.

Francine Vargas, an investigator with the Brazoria County Sheriff's Office, also testified. Vargas conducted the child's forensic interview. Vargas stated that the child was "very hurt" and "broke down several times and cried," but her account of events to Vargas was internally consistent. Mendoza voluntarily met with Vargas for an interview two days after his daughter made her outcry. Vargas testified that, during this interview, Mendoza admitted to having vaginal intercourse with his daughter on multiple occasions. Mendoza never said that his daughter was not telling the truth, and he never called her a liar. Mendoza told Vargas that there were "problems with his marriage, although [he provided] no exact excuses as to why" he abused his daughter.

Mendoza also testified at trial. In posing a question to Mendoza, his defense counsel acknowledged Mendoza had "admitted at least touching [his daughter's] breasts," and he asked whether Mendoza had touched her inappropriately "in other ways." Mendoza responded that he had not. Mendoza stated that he had not had intercourse with his daughter, but he then agreed with his counsel that he had "touched [his] penis to her mouth, her vagina, or her anus," although he could not recall how old she was when this occurred. Mendoza acknowledged that he made admissions of improper conduct during his interview with Vargas. He had the following exchange with his counsel:

Q. But basically I mean my question is you've pleaded not guilty to nearly all of these counts that you're accused [of]. And I mean did you inappropriately have sex with your daughter when she was 9, 10, 11, or 12 years old, 13 or 14 years old?

A. No.

Q. Did you touch her inappropriately in any way other than the admissions you've made?

A. Besides that?

Q. Yes.

A. Well, I could say yes but she knows. My wife also knows that. It's all parent—sometimes we would play. And while playing I cannot say that I did it intentionally. But sometimes while playing, yes. I would touch her, yes, because—well, since she's the oldest and the little boy was so small, sometimes we would play wrestling, me and her.

Q. But that was done, I guess, in a normal fatherly/daughter way or?

A. Well, to tell the truth, she always liked to play.

Mendoza stated that his daughter had not been entirely truthful during her testimony, specifically, her testimony that penetration had occurred.

On cross examination, the following exchange occurred between Mendoza and the State:

Q. And in front of this jury and the judge you stood up and pled guilty to touching on the breasts for your sexual gratification?

A. No.

Q. Okay. So you don't remember pleading guilty to touching your daughter's breasts?

A. Oh, yes. Yes, I did say that.

5

Q.  Okay. So that count is touching breasts with sexual gratification [or] desire?

A.  No.

Q.  So you didn't listen to when the District Attorney read that charge and you pled guilty?

A.  Yes, I said yes. But I've never seen her like that in that way.

Q.  So you pled guilty to this not understanding it?

A.  No. I did understand the question.

Q.  Okay. Well, let me read it to you. Hang on. It says on or about the 1st day of January, 2015, and before the presentment of this indictment, in said County and State, did then and there, with the intent to arouse or gratify the sexual desire of said Defendant—that's you—intentionally or knowingly engage in sexual contact with [his daughter], a child younger than 17 years and not the spouse of the Defendant, by touching the breasts of said child. Do you remember that being read to you?

A.  Yes.

Q.  Do you remember pleading guilty to it?

A.  Yes.

Q.  Okay. So why don't you tell me about the time that you first touched your daughter's breasts in a sexual manner?

A.  I didn't do it like that.

Q.  Okay. Tell me how you did it.

A.  Playing. Like I said before.

Q.  So why did you plead guilty to something you didn't do?

A.  Because all the questions that are—that are right there have something to do because they say that there were sexual relations.

Q.  No. That count says that you touched her breasts for sexual purposes. So did you touch her for sexual purposes?

6

A.     No.

On redirect examination, defense counsel again questioned Mendoza about touching his daughter's breasts:

Q.     So I guess just to be clear, I mean today you pled guilty to what is Count Eleven. Did you not hear the intent to arouse or gratify the sexual desire of said Defendant as part of that count?

A.     I was just thinking it was touching without any intention.

Q.     But that's not what you said in the past. I mean you said not guilty in the past. Would that be fair?

A.     Yes.

After the parties rested but before the trial court charged the jury, Mendoza requested withdrawal of his guilty plea to Count Eleven, arguing that he "essentially retracted that guilty plea in his testimony." The State opposed withdrawal, arguing that Mendoza had already pleaded guilty in front of the jury and withdrawal of the plea would "confuse the jury." The trial court stated that it "already accepted the plea," noted that it had asked Mendoza several questions to ensure that his guilty plea was made knowingly and voluntarily, and it denied Mendoza's request.

The charge informed the jury that Mendoza "entered a plea of guilty to the offense of Indecency with a Child Sexual Contact, Count Eleven" and "persists in his plea." The trial court thus instructed the jury to find Mendoza guilty of Count Eleven.

7

The jury convicted Mendoza of all twelve counts. The trial court assessed Mendoza's punishment at fifty years' imprisonment for each of the three counts of aggravated sexual assault of a child and ten years' imprisonment for each of the nine remaining counts of sexual assault of a child, prohibited sexual conduct, and indecency with a child by contact. The trial court ordered all of the sentences to run concurrently.

## Discussion

In his sole issue on appeal, Mendoza contends that the trial court erred in not allowing him to withdraw his guilty plea to Count Eleven.

I agree with the majority that, because the jury had not yet retired to deliberate at the time Mendoza sought to withdraw his guilty plea to Count Eleven, he had an absolute right to withdraw his guilty plea and the trial court erred by not allowing him to withdraw the plea. *See Mendez v. State*, 138 S.W.3d 334, 345 (Tex. Crim. App. 2004) (holding that defendant has right to withdraw guilty plea, but right must be exercised in timely manner and that, in jury trial, request is timely if made before jury retires to deliberate its verdict); *Fairfield v. State*, 610 S.W.2d 771, 776 (Tex. Crim. App. 1981) (holding that if defendant's request to withdraw guilty plea is timely, defendant has unqualified right to withdraw).

However, I disagree with the majority that the trial court's refusal to allow Mendoza to withdraw his guilty plea constituted reversible error. In *Payne v. State*,

the Court of Criminal Appeals acknowledged that it had applied the constitutional harmless error analysis to a trial court's failure to honor a defendant's timely request to withdraw a guilty plea in two previous cases, *McWherter v. State*, 571 S.W.2d 312, 313–14 (Tex. Crim. App. 1978), and *Wilson v. State*, 515 S.W.2d 274, 275 (Tex. Crim. App. 1974). *See Payne v. State* 790 S.W.2d 649, 651 (Tex. Crim. App. 1990); *see also* TEX. R. APP. P. 44.2(a) (setting out standard for harmless error review of constitutional errors). These cases, together with *Payne* itself, set the standard for a court's constitutional error in refusing to permit a defendant to withdraw a guilty plea.

In *Wilson*, a felony theft case, the defendant at first pleaded guilty but later sought to withdraw his guilty plea. *See* 515 S.W.2d at 274. The Court of Criminal Appeals held that the trial court erred in refusing to allow the defendant to withdraw his guilty plea, but the error was harmless because the defendant had taken the stand and made a judicial confession, a written judicial confession was placed in evidence, and the evidence of the defendant's guilt was overwhelming. *See id.* at 275.

In *McWherter*, the defendant pleaded guilty to aggravated robbery. *See* 571 S.W.2d at 313. After the State's case in chief, the defendant moved to withdraw his guilty plea, but the trial court refused to allow withdrawal of the plea. *Id.* On appeal, the State argued that the trial court's error was harmless because the evidence of the defendant's guilt was overwhelming and the defendant did not put on any evidence

after he requested withdrawal of the plea. *Id.* at 314. The Court of Criminal Appeals held, in contrast to *Wilson*, that the error was harmful, explaining that the defendant "claims the insufficiency of the evidence could have been argued to the jury" and "notes that an oral confession was admitted into evidence over his objection and without a separate hearing upon request on the voluntariness of such confession." *Id.*; *see also Payne*, 790 S.W.2d at 652 (stating, in discussing *McWherter*, that, "in a case in which there was some factual dispute, accompanied by some suggestion that a confession might have been involuntarily given, we declined to find that the error was harmless").

After *McWherter* and *Wilson*, but prior to *Payne*, the Court of Criminal Appeals established that a defendant's right to withdraw a guilty plea and enter a plea of not guilty before the cause is submitted for deliberation "is an unqualified one, derived directly from the 'inviolate' right to trial by jury." *Fairfield*, 610 S.W.2d at 776 (quoting TEX. CONST. art. I, § 15). Therefore, the constitutional standard for finding harmless error applies, requiring that "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *see Abrego v. State*, 977 S.W.2d 835, 839 (Tex. App.—Fort Worth 1998, pet. ref'd) (citing Rule 44.2(a) and holding

that trial court's erroneous refusal to allow withdrawal of guilty plea is constitutional in nature).

The *Payne* court paraphrased the Rule 44.2(a) standard for finding harmless constitutional error in analyzing *Wilson* and *McWherter*. It stated that it has found that the failure of a judge to allow a defendant to timely withdraw a guilty plea constitutes harmless error only "when there is no evidence suggesting that the defendant is not guilty or is guilty only of a lesser included offense." *Payne*, 790 S.W.2d at 651; *Abrego*, 977 S.W.2d at 839.

Applying the constitutional standard of harmful error, the *Payne* court found *Wilson* to be factually distinguishable from the situation before it. Unlike the defendant in *Wilson*, the defendant in *Payne* had failed to make an unequivocal oral judicial confession, and his testimony contradicted his signed confession in a material factual aspect. *See* 790 S.W.2d at 652. Specifically, the signed confession stated that the defendant had used a gun, while his trial testimony "clarified" this statement to say that he had used a toy gun, rather than an actual firearm, raising a question whether he was guilty of the charged offense of aggravated robbery. *Id.* Thus the *Payne* court found that "there was a significant factual issue as to appellant's guilt of aggravated robbery." *Id.* The court observed that in contrast, "[i]n *Wilson*, there apparently was never any challenge to the substance of any of the confessions and the defendant's guilt was not a factual issue." *Id.* It reasoned, "This

distinction, whether the defendant's factual innocence is at issue, is important under our prior case law." *Id.* It concluded that, in *Payne*, unlike in *Wilson*, the defendant's "testimony served to undermine the factual validity of his signed confession." *Id.* Accordingly, the court reversed and remanded the case. *Id.* The defendant's testimony also served to raise an issue of the voluntariness of the signed confession made pursuant to his guilty plea. *Id.* Accordingly, the court found that the defendant's testimony raised factual issues, precluding a finding beyond a reasonable doubt that the trial court's error in refusing to allow withdrawal of the guilty plea did not affect the outcome of the trial. *Id.*

This case is like *Wilson*, rather than *McWherter* and *Payne*. Here, Mendoza pleaded guilty to the offense of indecency with a child and later took the stand and admitted that he had pleaded guilty to "intentionally or knowingly engag[ing] in sexual contact" with his daughter "by touching [her] breasts," but he then claimed "it was touching without any intention." He agreed that he had "touched [his] penis to her mouth, her vagina, or her anus"; and his defense counsel acknowledged that Mendoza had "admitted at least touching [his daughter's] breasts." *See* TEX. PENAL CODE ANN. § 21.11(c) (providing that for offense of indecency with child, sexual contact must be committed "with the intent to arouse or gratify the sexual desire of any person"). He also signed a guilty plea acknowledging his guilt. There was no indication that Mendoza did not understand that he was confessing to having the

intent to touch his daughter's breasts for his own sexual gratification when he made and signed his plea, and he testified that he did understand his guilty plea. All that had changed when Mendoza sought to withdraw his plea of guilty to Count Eleven later in the trial was that he gave an equivocal and self-serving description of what was in his mind—that he touched his daughter's breasts while they were play-wrestling and that he "[could not] say that [he] did it intentionally." There was no objectively provable evidence of facts to establish the innocence of that touching, and there was overwhelming evidence that Mendoza had repeatedly touched his daughter inappropriately for his sexual gratification in many ways and had also sexually penetrated her.

As discussed above, Mendoza's daughter testified concerning the abuse, including testimony that Mendoza, among other actions, had touched her breasts with his hands. She testified that he touched her inappropriately "many times" and that she "can't count" the number of times he abused her. She also testified that, if she tried to push Mendoza away, he would use force to hold her down. Francine Vargas, an investigator who conducted a voluntary interview with Mendoza, testified that Mendoza admitted to having had vaginal intercourse with his daughter on multiple occasions and that he never said that his daughter was not telling the truth about the abuse. Mendoza's testimony, on the other hand, was contradictory, equivocal, and self-serving.

In short, I would find that there is legally insufficient evidence—evidence insufficient to raise a fact issue for the jury—to raise a reasonable doubt as to whether Mendoza committed the crime to which he pleaded guilty in Count Eleven—the crime of indecency with a child, specifically, inappropriately touching his daughter's breasts for his own sexual gratification. There is only Mendoza's contradictory and equivocal claim of the innocence of his touching her breasts; and that is not enough to raise a reasonable doubt as to his innocence of that one offense among the twelve of which he was convicted. *See Payne*, 790 S.W.2d at 651 (describing *Wilson* as applying constitutional harmless error analysis); *Wilson*, 515 S.W.2d at 275 (finding harmless error where defendant made judicial confession, written judicial confession was placed in evidence, and evidence of guilt was overwhelming). I conclude that no reasonable factfinder would find that the State did not meet its burden of proving Count Eleven beyond a reasonable doubt. *See* TEX. R. APP. P. 44.2(a) (stating that if appellate record in criminal case reveals constitutional error subject to harmless error review, court of appeals must reverse judgment of conviction or punishment "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment").

On appeal, Mendoza challenges only the trial court's failure to allow him to withdraw his guilty plea to Count Eleven. He does not challenge his conviction of

14

any of the other eleven counts, and in his prayer for relief, he seeks only reversal of his conviction of Count Eleven and a new trial on that single count.

After the jury found Mendoza guilty of Count Eleven, the trial court assessed his punishment for that count at ten years' confinement. Mendoza was also, however, convicted of eleven other counts, including one count of sexual assault of a child, three counts of aggravated sexual assault of a child, five counts of prohibited sexual conduct, and two additional counts of indecency with a child by contact. The trial court assessed Mendoza's punishment at fifty years' confinement for each of the three aggravated sexual assault of a child offenses, ten years' confinement for each of the eight other offenses, and it ordered the sentences for all counts to run concurrently.

Again, Mendoza does not challenge his convictions for any of these eleven other offenses on appeal; he challenges only his conviction for Count Eleven. Practically speaking, even if, on remand and a new trial, a jury were to agree with Mendoza that he lacked the requisite mens rea with respect to Count Eleven—an outcome that is extremely unlikely, given the overwhelming evidence of Mendoza's intent in touching his daughter inappropriately and penetrating her—Mendoza would still be serving a fifty-year prison sentence due to the eleven unchallenged convictions. Thus, retrying this one count, with its ten-year sentence, which was ordered to run concurrently with the rest, would be wasteful of judicial and litigant

15

resources as well as expensive, and therefore futile. *See* TEX. CODE CRIM. PROC. ANN. art. 1.03 (stating that Code of Criminal Procedure seeks, among other goals, "[t]o insure a trial with as little delay as is consistent with the ends of justice").

I would hold that there is legally insufficient evidence—no evidence sufficient to raise a reasonable doubt—that Mendoza was not guilty of the offense of indecency with a child with which he was charged in Count Eleven.

## Conclusion

I respectfully dissent. I would hold that the trial court's constitutional error in denying Mendoza the right to timely withdraw his guilty plea as to Count Eleven was harmless, and I would affirm the judgment of the trial court.


           Evelyn V. Keyes
           Justice

Panel consists of Justices Keyes, Kelly, and Goodman.

Justice Keyes, dissenting.

Publish.  TEX. R. APP. P. 47.2(b).