**Opinion filed February 28, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00359-CR

_____

## MICHAEL ANDREW GUERRA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 259th District Court**
**Jones County, Texas**
**Trial Court Cause No. 011608**

## M E M O R A N D U M   O P I N I O N

A jury convicted Appellant, Michael Andrew Guerra, of assault on a public servant, a third-degree felony.  TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (West Supp. 2021).  The jury assessed Appellant's punishment at confinement for a term of eight years in the Institutional Division of the Texas Department of Criminal Justice.  Appellant challenges his conviction in three issues.  In his third issue,

Appellant asserts that the trial court abused its discretion when it failed to conduct an informal inquiry concerning his competency after receiving some evidence during the trial proceedings suggesting that Appellant might not be competent to stand trial. In his first issue, Appellant contends that the trial court abused its discretion when it failed to conduct a formal competency trial. *See* TEX. CODE CRIM. PROC. ANN. arts. 46B.004(c)–(d), .005 (West 2018). We agree.

We previously abated this appeal and remanded this cause to the trial court to conduct, if feasible, a retrospective competency trial. A copy of our October 14, 2021 abatement order is attached as an appendix to this opinion. We expressly incorporate the abatement order as a part of the opinion in this appeal.

In our abatement order, we determined that some evidence came to the attention of the trial court during trial suggesting that Appellant might be incompetent. We concluded that the trial court abused its discretion in failing to stay the trial proceedings to conduct a formal competency trial. Accordingly, we instructed the trial court to determine if a retrospective competency trial was feasible. By doing so, we essentially sustained Appellant's third issue, which complained of the absence of an informal competency inquiry, and we sustained Appellant's first issue in part by determining that the trial court should have conducted a formal competency trial.

In response to our abatement order, the trial court has now determined that a retrospective competency trial is infeasible. On the reinstatement of this appeal, we now reverse Appellant's conviction and remand this cause for a new trial.

*Factual and Procedural History*

We incorporate the "Background Facts" set out in our abatement order. In addition to those facts, we note that in 2015, a jury convicted Appellant of indecency

with a child. In accordance with the jury's recommendation, the trial court placed Appellant on community supervision for seven years. We later affirmed Appellant's previous conviction for indecency with a child. *See Guerra v. State*, No. 11-15-00155-CR, 2016 WL 4574954 (Tex. App.—Eastland Aug. 25, 2016, pet. ref'd) (mem. op., not designated for publication).

Appellant's conviction for assault on a public servant arises from an event that occurred during the revocation proceeding initiated by the State to revoke Appellant's community supervision due to Appellant's violation of certain terms of his community supervision. During the revocation proceeding, Appellant became disruptive and allegedly bit James Duke when Duke tried to restrain him. Duke was the Jones County jail administrator and was providing courtroom security that day. Appellant was later indicted for assault on a public servant for intentionally, recklessly, and knowingly causing bodily injury to Duke, by biting him, with knowledge that Duke was a public servant. Appellant does not challenge the sufficiency of the evidence supporting his conviction for that offense.

*Analysis*

Upon reinstatement, this appeal presents a single question for our determination—What is the appropriate disposition of the appeal when: (1) the trial court should have conducted a formal competency trial; and (2) the trial court has determined that a retrospective competency determination is not feasible?

In our abatement order, we determined that "some evidence" came to the trial court's attention during the trial proceedings suggesting that Appellant might be incompetent to stand trial, thereby triggering the requirement for the trial court to conduct an informal competency inquiry. *See* CRIM. PROC. art. 46B.004(c). We further determined that there was more than a scintilla of evidence that

3

Appellant had a debilitating mental illness that might have caused him to lack the "capacity . . . to . . . engage in a reasoned choice of legal strategies and options . . . [or] to engage with counsel in a reasonable and rational manner." *See Turner v. State*, 422 S.W.3d 676, 689 (Tex. Crim. App. 2013) (quoting CRIM. PROC. art. 46B.024, §§ 1(c), 4)). Therefore, we held that the trial court abused its discretion by failing to stay the underlying trial proceedings to conduct a formal competency trial. We reaffirm those determinations and that holding today.

Because of the trial court's failures, we abated this appeal and remanded this cause to the trial court with instructions to conduct, if feasible, a retrospective competency determination. *See Boyett v. State*, 545 S.W.3d 556, 566 (Tex. Crim. App. 2018); *Turner*, 422 S.W.3d at 696; *Bautista v. State*, 605 S.W.3d 520, 530 (Tex. App.—Houston [14th Dist.] 2020, no pet.). We also instructed the trial court to first determine "whether it is presently feasible to conduct a retrospective competency trial, given the passage of time, availability of evidence, and any other pertinent considerations." *Turner*, 422 S.W.3d at 696; *see* 43 George E. Dix & John M. Schmolesky, 43 *Texas Practice: Criminal Practice and Procedure* § 31:81 (3d ed. 2020) (discussing retrospective competency hearings and the feasibility of such hearings).

Pursuant to our abatement and remand, the trial court entered its Court Order on Feasibility of a Retrospective Competency Determination. In that order, the trial court stated that it had determined Appellant to be competent at the time of trial and that the presumption of competence in Article 46B.003(b) was not overcome at trial. Further, the trial court included the following findings:

- competency is a fluid, complex state;
- a retrospective determination of a person's legal competency to stand trial more than two years after trial is not feasible;

4

- no new evidence would exist that was not considered at the time that Appellant's determination of competency was made; and

- no further evaluation could be conducted or expert testimony submitted that could determine whether Appellant was competent at the time of trial.

We agree with the trial court that "competency is a fluid, complex" question. However, when some evidence from any source exists that would support a finding that the defendant may be incompetent to stand trial, the question of competency is one that must be decided in a formal competency trial. *See Turner*, 422 S.W.3d at 692–93; *see also* CRIM. PROC. art. 46B.051.

We previously determined that the state of the evidence developed during the trial proceedings was such that Appellant was entitled to a formal competency trial. However, the trial court has subsequently determined that a retrospective competency trial is not feasible. In light of that determination, the appropriate disposition of this appeal is a reversal of Appellant's conviction and a remand for new trial. *See Greene v. State*, 264 S.W.3d 271, 273 (Tex. App.—San Antonio 2008, pet. ref'd; *see also Anderson v. State*, No. 04-00-00751-CR, 2002 WL 432674, at *4 (Tex. App.—San Antonio Mar. 20, 2002, no pet.) (not designated for publication).

Accordingly, we sustain Appellant's first and third issues. In light of our disposition of these issues, we need not address Appellant's second issue.[1]

---

[1]In Appellant's second appellate issue, he asserts that the trial court's failure to conduct an informal inquiry and a formal competency hearing deprived him of an impartial jury. Because we have sustained Appellant's first and third issues, a ruling as to Appellant's second issue is not "necessary to a final disposition of the appeal." *See* TEX. R. APP. P. 47.1

*This Court's Ruling*

We reverse the trial court's judgment of conviction and remand this cause to the trial court for a new trial.

W. BRUCE WILLIAMS
JUSTICE

February 28, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

# APPENDIX

**Order filed October 14, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00359-CR

_____

## MICHAEL ANDREW GUERRA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 259th District Court**
**Jones County, Texas**
**Trial Court Cause No. 011608**

### O R D E R

Appellant, Michael Andrew Guerra, challenges his conviction for assault on a public servant, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (West Supp. 2020). Appellant raises three issues, but we only address one at this time. In his first issue, Appellant contends that the trial court abused its discretion in failing to order a competency examination after receiving some

evidence during the pendency of Appellant's trial that suggested that Appellant was not competent to stand trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c) (West 2018). Because the record indicates that some evidence did come to the trial court's attention suggesting that Appellant may not have been competent when he stood trial, we abate this appeal and remand to the trial court to determine whether a retrospective competency determination is feasible. If it is feasible, then the trial court shall conduct one.

*Background Facts*

Appellant's trial counsel, Trey Keith, filed a pretrial motion suggesting that Appellant may be incompetent to stand trial. In that motion, Keith described Appellant as "fixated on the idea that his current detention is unlawful, but the basis of his belief is unclear . . . [his] speech is rapid, and frequently non-stop; his locutions are repetitive and rambling, but the apparent theme is that [Appellant] believes himself to be the victim of ongoing injustice . . . [such that he is] entirely distracted by his perception that he is being persecuted by the system." It should be noted that Appellant continued to exhibit such behavior throughout the entirety of his trial.

The trial court ordered that Appellant be examined by Dr. Samuel D. Brinkman. Based on Dr. Brinkman's evaluation of Appellant and the opinions stated in his expert report, the trial court found sufficient evidence to suggest that Appellant "does not possess a rational understanding of the charges against him and . . . is not able to provide meaningful assistance to Counsel" in preparing his defense. In light of the trial court's finding, on February 28, 2018, the trial court ordered that Appellant be committed to the North Texas State Hospital in Big Spring, Texas. On August 8, 2018, the trial court found that Appellant was still incompetent to stand trial and ordered that his commitment in the North Texas State Hospital be extended

for a year in order to help Appellant regain his competency.  On October 30, 2018, the Texas Department of Health and Human Services filed a report concluding that Appellant "is presently competent to stand trial."  After Appellant's competency to stand trial was restored, this case went to trial nine months later.

*Pretrial Hearings*

At the first pretrial conference, on July 9, 2019, Appellant stated that he did not understand why he was sent to North Texas State Hospital.  Appellant complained that he was required to take medication for schizophrenia while he was there and that those medications were still being provided, though he refused to take them after being released from North Texas State Hospital.

At the second and final pretrial hearing, Appellant's trial counsel, Keith, made the following address to the trial court:

> Mr. Guerra reports to me this morning that he doesn't . . . understand why we're going to jury trial next week.  He doesn't believe that he's currently accused of the offense, which is actually scheduled to go to trial.  He believes he's already been discharge[d] and dismissed[.]

Appellant began to interrupt, and the trial court had him removed from the courtroom.  The trial court then made the following remark:

> [L]et the record reflect that he has for the second time in court engaged in an outburst. I believe that it's his intent to do that purposefully so that he can avoid the purs[uit] of justice.
>     . . . .
>     . . . He's been restored, for the record, to his mental competency. . . .  [A]nd so we've got to put our blindfolds on and press forward.

*Voir Dire*

The following week, at the beginning of voir dire, the trial court began by reading from the report made by the Texas Department of Health and Human

10

Services in October of 2018, deeming Appellant "presently competent to stand trial."

Upon Keith's request, the trial court then also made note of paragraph three:

> It is of vital importance that [Appellant] continues medication therapy while awaiting trial. His medication is at a therapeutic level and must be maintained for continued managing symptoms. . . . His diagnosis [is] [s]chizoaffective disorder, bipolar type.

After reading paragraph three into the record, the following exchange took place between the trial court and Keith:

> THE COURT: [L]et's not dance around the elephant in the room. Are you suggesting that you believe that [Appellant] is not [t]aking his medications, and, therefore, you do not believe he is competent to stand trial on the very day that we are proceeding forward with trial[?]
>
> [KEITH]: Judge, [Appellant] instructs me that he is competent and he wants [to] proceed to trial. I certainly believe there was an issue when I first filed a request for [an] exam that resulted in his commitment to Big Spring back in September or October of 2017. I -- Judge, I don't think I'm permitted to -- I don't think I'm capable of giving an opinion. [Appellant] tells me he's competent so . . . .

The trial court then conducted the following, informal inquiry with Appellant:

> [Q]: . . . Do you believe you're competent?
>
> [A]: Yes, sir.
>
> [Q]: Have you been taking any medications?
>
> [A]: No, sir.
>
> . . . .
>
> [Q]: And why do you choose to not take the medications?
>
> [A]: Because I was born a human being without any problems. I speak perfect English. I can write perfect English. I passed high school and everything like that. And there's -- I know the law from front to back, each paper. . . . There's nothing in there that any paper that says doesn't tell me I'm guilty. . . . I have civil rights. . . . [A]nybody can

11

type up a paper and say I'm guilty and when they show it to you, you're going to go off the paper and say I'm guilty . . . based on the paper.

. . . .

[Q]: Do you understand that all of us have a certain level of conduct that we must comply with?

[A]: Yes, sir, the Declaration of Independence.

The trial court was ostensibly satisfied with Appellant's responses, and the voir dire proceedings commenced. During a recess for the parties to consider their peremptory strikes, Appellant instructed his attorney "to not exercise any strikes." The jury that was ultimately empaneled, with no strikes having been made by Appellant, included seven venirepersons who gave disconcerting responses during voir dire. Upon observing the unselected venirepersons being dismissed from the courtroom, Appellant audibly complained, "But the contract stated that they all -- that all those names stated that -- for the jury in the cause number of this case and they all left except these amount." The trial court disregarded Appellant's remarks and continued with the trial proceedings.

*The Trial*

At trial, and after the State rested its case-in-chief, the trial court advised Appellant of his Fifth Amendment right not to testify. The trial court neither inquired as to whether Appellant understood this right nor solicited any other response from him. Appellant testified during both the guilt/innocence and punishment phases of trial, and his answers were routinely nonresponsive, rambling, confusing, or unintelligible. During his testimony, Appellant also renewed his complaint from voir dire about the jury's size:

This is the first time I've had a jury trial with at least some, but not all the ones that were here. They all signed a contract for the whole case.

12

They were excluded. I did say that I do not want to exclude any of them. I signed for them to be all jurors.

*This Appeal*

We begin with a threshold matter, addressing why the State's claim that the issues are not preserved for appeal under TEX. R. APP. P. 33.1(a) is mistaken. We then explain why there was some evidence to suggest that Appellant was incompetent to stand trial, such that the trial court abused its discretion in failing to stay the proceedings and to conduct a formal competency trial in compliance with the procedures outlined in Article 46B of the Texas Code of Criminal Procedure. Therefore, we abate this appeal and remand this cause to the trial court with instructions to conduct a retrospective competency hearing, if feasible.

*I. Appellant's complaints are properly before this court because an error regarding the application of Article 46B is either systemic or waivable only, which makes it exempt from the ordinary preservation requirements of Rule 33.1(a).*

A. *Standard of Review*

Rule 33.1(a) of the Texas Rules of Appellate Procedure "could be summarized as requiring a timely, specific objection and a ruling by the trial court," in order for a complaint to be properly preserved for appeal. *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). Crucially, this rule does not apply to "rights which are waivable only or to absolute systemic requirements, the violation of which may still be raised for the first time on appeal." *Id.* Indeed, systemic requirements and waivable only rights "cannot be made subject to rules of procedural default because, by definition, they are not forfeitable." *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993).

A systemic requirement is "a law that a trial court has a duty to follow even if the parties wish otherwise[,]" and violations of which any party can complain about

13

on appeal, "even if the party failed to complain about the failure." *Mendez*, 138 S.W.3d at 340. Rights that are waivable only are "rights of litigants which must be implemented by the system unless expressly waived." *Id.* (quoting *Marin*, 851 S.W.3d at 279). A litigant is never deemed to have waived a right that is waivable only, "unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record." *Marin*, 851 S.W.2d at 280 (citing *Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992)).

At the very least, "[a] law that puts a duty on the trial court to act *sua sponte*, creates a right that is waivable only . . . [and] cannot be . . . forfeitable by a party's inaction." *Mendez*, 138 S.W.3d at 342. Thus, if Article 46B of the Texas Code of Criminal Procedure places a duty on trial courts to act *sua sponte*, then Appellant's complaints are not subject to Rule 33.1(a)'s preservation requirement.

### B. *Analysis*

It is a violation of due process for an incompetent person to be tried, convicted, or sentenced for a criminal offense. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966) ("[T]he conviction of an accused person while he is legally incompetent violates due process."); *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018) ("As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial."). Thus, states are required to implement procedures that are "adequate to assure that incompetent defendants are not put to trial." *Turner v. State*, 422 S.W.3d 676, 689 (Tex. Crim. App. 2013). The Texas Legislature codified this due process requirement in Article 46B, which "elaborately describe[s] the circumstances that require, and the procedures for making, a determination of whether a defendant is competent to stand trial." *Id.*

14

For purposes of this section, what is important about Texas's procedure is that "[i]f evidence suggesting the defendant may be incompetent to stand trial *comes to the attention of the court*, the court on its own motion *shall* suggest that the defendant may be incompetent to stand trial." CRIM. PROC. art. 46B.004(b) (emphasis added). Thus, trial courts have a duty to be vigilant as to whether there is evidence suggesting a defendant's incompetence to stand trial and must *sua sponte* raise the issue if such evidence comes to its attention. Furthermore, should that happen, "the court *shall* determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(c) (emphasis added). And if the trial court does find some evidence of the defendant's incompetency at the informal inquiry, "the court . . . *shall* stay all other proceedings in the case" and conduct a formal competency trial. *Id.* art. 46B.004(d) (emphasis added). A competency trial may be forgone *only* when neither party's counsel requests a trial on the issue of incompetency; *and* neither party's counsel opposes a finding of incompetency; *and* the trial court does not, on its own motion, determine that a trial is necessary to determine incompetency. CRIM. PROC. art. 46B.005(c).

Appellant claims that the trial court abused its discretion in failing to stay the proceedings and order a competency trial because there was some evidence, at the time of the trial court's informal inquiry, to support a finding that he was not competent to stand trial. If there was, in fact, some evidence, then the trial court had a duty to either find Appellant incompetent or stay the proceedings in order to conduct a formal competency trial irrespective of what the parties agreed to or requested. This requirement cannot be forfeited by inaction nor waived by agreement of the parties. The trial court has this duty irrespective of what the parties

do or do not request.  As such, Appellant may raise the issue for the first time on appeal.

> *II. The trial court erred in failing to stay the proceedings and to conduct a formal competency trial after 'some evidence' came to its attention suggesting that Appellant's debilitating mental illness was the engine of his obstinacy.*

### A. *Standard of Review*

When evidence suggesting a defendant may not be competent to stand trial comes to the attention of the trial court, "the court shall determine by informal inquiry whether there is *some evidence* from any source that would support a finding that the defendant may be incompetent." CRIM. PROC. art. 46B.004(c) (emphasis added).  The Court of Criminal Appeals has explained that *some evidence* only requires "'more than none or a scintilla' of evidence that 'rationally may lead to a conclusion of incompetency.'"  *Boyett*, 545 S.W.3d at 564 (quoting *Turner*, 422 S.W.3d at 696).

During the informal inquiry, "a trial court must consider only evidence of incompetency, and it must not weigh evidence of competency against the evidence of incompetency."  *Id.*; *see also Bautista v. State*, 605 S.W.3d 520, 527–28 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (explaining that "the informal inquiry is not the appropriate venue for determining the merits of a claim of incompetency").

Finally, it is insufficient to stay the proceedings and order a competency trial simply because the informal inquiry reveals more than a scintilla of evidence that the defendant is mentally ill, that he "refuses to cooperate with his trial counsel," or both.  *Turner*, 422 S.W.3d at 691.  Rather, there must be more than a scintilla of evidence to suggest "that the defendant's refusal to rationally engage with counsel is caused by his mental illness."  *Boyett*, 545 S.W.3d at 564.  Thus, in the present case, there must be more than a scintilla of evidence that Appellant's bipolar

schizophrenia is the well-spring of his self-sabotaging decisions not to strike any venirepersons and to testify (poorly) in his own defense, despite his lawyer's advice.

B. *Analysis*

During the trial court's informal inquiry at the beginning of voir dire, there did exist some evidence that Appellant (1) had a debilitating mental illness, (2) had been prescribed medication for that illness, (3) had regained his competency through the use of that medication, and (4) had stopped using that medication, which the Texas Department of Health and Human Services described as "vital" to managing the symptoms that were ostensibly responsible for Appellant's prior incompetency. But what was missing, at that time, was some evidence suggesting that Appellant was obstinately refusing to rationally cooperate with his attorney, to his detriment.

By the time voir dire had ended, the trial court had learned that Appellant's delusional belief in his own knowledge of the law and in the number of venirepersons that may sit on a jury had resulted in a failure to strike any potential jurors, even though seven of the venirepersons who were ultimately empaneled gave answers suggesting they would be harmful to Appellant's defense. The trial court learned that Appellant's deluded belief in his own legal prowess further meant that he had no intention of accepting any advice that his attorney was prepared to provide throughout trial. These revelations, in combination with what was already known by then, created more than a scintilla of evidence that Appellant's debilitating mental illness may be causing him to lack the "capacity . . . to . . . *engage* in a *reasoned* choice of legal strategies and options . . . [or] *to engage with counsel in a reasonable and rational manner*." *Turner*, 422 S.W.3d at 689 (quoting CRIM. PROC. art. 46B.024, §§ 1(c), 4).

17

There existed some evidence suggesting that Appellant was not competent to stand trial by the *end* of voir dire. The State argues, however, that because the informal inquiry had ended *before* the trial court had seen any evidence that Appellant was obstinately refusing to cooperate with his attorney or that he intended to disregard his attorney throughout the trial as a result of his mental illness, the trial court did not abuse its discretion in refusing to stay the proceedings and conduct a formal competency trial. The State directs our attention to a passage from *Turner*, which appears to emphasize the time sensitivity of the informal inquiry:

> The question therefore becomes whether, in light of what became known to the trial court *by the conclusion of* th[e] informal inquiry, it should have conducted a formal competency trial. The answer depends upon whether "some evidence from any source" had arisen *by that time* "that would support a finding that [the appellant] may be incompetent to stand trial."

*Id.* at 692 (second alteration in original) (emphasis added) (quoting Crim. Proc. art. 46B.004 (c)).

According to the State, even if some evidence suggesting that Appellant was incompetent had come to the trial court's attention by the end of voir dire or subsequently throughout the trial, such evidence was not known by the conclusion of the informal inquiry when voir dire began. Thus, the State urges, the trial court did not abuse its discretion in failing to stay the proceedings and conduct a formal competency trial. What the State overlooks, however, is the paragraph that immediately follows in *Turner*:

> Should the formal competency trial result in a finding of competency, the trial court is not obliged to revisit the issue later absent a material change of circumstances suggesting that the defendant's mental status has deteriorated. However, especially when there has been a suggestion of incompetency but no formal adjudication of the issue, due process requires the trial court to remain ever vigilant for

18

changes in circumstances that would make a formal adjudication appropriate.

*Id.* at 693 (footnote omitted).

The trial court conducted an informal inquiry at the beginning of voir dire but did not follow the formal competency trial procedures in Article 46B. As such, due process required the trial court to remain vigilant of any subsequent developments that may have made a formal adjudication necessary. Moreover, even if we consider the formal competency adjudication that took place a year before voir dire occurred in this case, the trial court was still obliged to revisit the issue if a change in circumstances suggested that Appellant's mental status had deteriorated. The record reflects that Appellant was deemed to have regained his competency as a result of his "vital" medications, and the trial court had been informed that Appellant had stopped taking those medications. Thus, when Appellant prevented his attorney from striking any potentially harmful jurors and announced to the trial court that he had no intention of listening to his lawyer's advice since he "know[s] the law from front to back, each paper," the trial court had a duty to revisit the matter and determine if this behavior amounted to more than a scintilla of evidence that Appellant's debilitating mental illness was preventing him from engaging in reasoned legal decisions and rationally engaging with his attorney. We conclude that it did. Thus, we hold that the trial court abused its discretion in failing to stay the proceedings and conduct a formal competency trial.

### *This Court's Order*

We have held that it was an abuse of discretion for the trial court not to stay the proceedings and conduct a formal competency trial after some evidence of Appellant's potential incompetency came to the trial court's attention. As such, we abate this appeal and remand this cause to the trial court with instructions to conduct

a retrospective competency determination, if feasible. *See Boyett*, 545 S.W.3d at 566; *Turner*, 422 S.W.3d at 696; *Bautista*, 605 S.W.3d at 530. On remand, the trial court shall first determine, "whether it is presently feasible to conduct a retrospective competency trial, given the passage of time, availability of evidence, and any other pertinent considerations." *Turner*, 422 S.W.3d at 696; *see* 43 George E. Dix & John M. Schmolesky, 43 *Texas Practice: Criminal Practice and Procedure* § 31:81 (3d ed. 2020) (discussing retrospective competency hearings and the feasibility of such hearings). Should the trial court find that a retrospective competency trial is feasible, "it shall proceed to conduct such a trial in accordance with Chapter 46B, Subchapter C, of the Code of Criminal Procedure." *Id.* If the trial court finds that a retrospective competency trial is not feasible, "the record of the proceedings on remand shall . . . be returned to this Court for reinstatement of the appeal." *Id.*

Under either scenario, the trial court is ordered to prepare appropriate written findings within twenty days after it has determined whether a retrospective competency trial is feasible, and the results of such proceeding, if feasibly conducted. We further order (1) that the district clerk forward a supplemental clerk's record containing the trial court's written findings within twenty days after the trial court files its written findings or order and (2) that the court reporter for the 259th district court create a supplemental reporter's record containing a transcript of all proceedings associated with any retrospective competency trial and to file the supplemental reporter's record with this court within thirty days after the trial court files its written findings or order.

Upon the filing of the supplemental clerk's record and the supplemental reporter's record with this court, the appeal will be reinstated. This court will issue

further orders and instructions to the parties, as necessary, upon the receipt of the records requested above.

It is so ordered.

W. BRUCE WILLIAMS

JUSTICE

October 14, 2021

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.